**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Carrol M. LYNN, Defendant-Appellant.**

No. 79–5121
Summary Calendar *.

United States Court of Appeals,
Fifth Circuit.

Dec. 10, 1979.

Rehearing Denied Jan. 18, 1980.

* Fed.R.App.P. 34(a); 5th Cir.R. 18.

Will Gray, Houston, Tex., for defendant-appellant.

Reid H. Weingarten, Sp. Atty., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before GEE, HENDERSON and HATCHETT, Circuit Judges.

PER CURIAM:

The appellant, Carrol M. Lynn, appeals from his conviction of one count of perjury before a federal grand jury[1], 18 U.S.C.A. § 1623, two counts of obstruction of justice, 18 U.S.C.A. § 1503, and one count of extortion, 18 U.S.C.A. § 1951 (Hobbs Act). The indictment resulted from an extortion scheme and the appellant's attempt to conceal it.

Late in 1977 Lynn, then assistant police chief in Houston, suggested to John Holden, a Houston oil man, that he might be able to ease Holden's difficulties with the Securities and Exchange Commission, which concerned allegations that Holden had sold interests in non-existent oil wells. The appellant suggested that he could solve Holden's problems by having Leonel Castillo, then Commissioner of the United States Immigration and Naturalization Service, intercede with the United States Attorney for the Southern District of Texas, J. A. "Tony" Canales. On November 28, 1977, the appellant met with Holden and his at-torney, Jerry Birnberg, at a private club in Houston. The appellant told Holden that he had already taken care of the matter,[2] and asked Holden to pay him $45,000.00.

Birnberg counseled his client that a payment to the appellant would constitute an illegal bribe. On December 15, 1977, Birnberg telephoned the appellant and told him that he would not pay the money. On January 14, 1978, Birnberg sent his law partner, Connie Ascosta, to Washington to speak with her friend, Commissioner Castillo. Castillo, hearing about the alleged influence-buying for the first time, immediately called Canales. Canales, also hearing about the "fix" for the first time, launched an investigation which culminated in a federal grand jury proceeding in February, 1978. The appellant's indictment stemmed in part from his statements before the grand jury.

On February 17, 1978, in sworn testimony before the grand jury, Lynn admitted that Maria Canfield had discussed Holden's case with Canales, and that he had told Holden and Birnberg that no investigation was pending. In response to questioning, however, Lynn denied requesting, personally or through others, money or other compensation for himself or anyone else.

Despite indirect communications from the appellant, Birnberg studiously avoided him until April 3, 1978. On that date Birnberg, returning to his home after teaching an evening seminar at a Houston law school, was shot from ambush by two men. No arrests have been made in connection with the shooting.

For some weeks prior to the shooting incident, the appellant was in frequent telephone contact with J. L. Patterson, a federal prisoner. Patterson had been employed by Holden, and Birnberg represented him on the appeal of his criminal conviction. Following the ambush, Lynn told Patterson that he believed that the "Mexican gang"

---

1. Count II was dismissed by the court at the conclusion of the government's case.

2. It appears that all the appellant had in fact accomplished, at that time, was to have a friend, Maria Canfield, inquire of the newly appointed Canales whether Holden was under investigation. Canales, unaware of the pending investigation of Holden, told Canfield that none was underway and Canfield relayed this information to the appellant.

was responsible for the shooting, and had ordered it because Birnberg had tarnished the reputations of Canales and Castillo. By this time Patterson was concerned about the appellant's mental health, as well as the safety of Holden and Birnberg, and he began to cooperate with law enforcement officials. Thereafter with Patterson's consent, telephone conversations between Patterson and the appellant were recorded, and several of the recordings were subsequently played before the jury. In the course of these conversations, among other things, the appellant made assertions relating to joint CIA–Mafia conspiracies, and plans to bomb Holden's home from the air.

On April 7, 1978, Holden, also cooperating with federal authorities, went to Lynn's office at the police station. The appellant told Holden that he was in danger and offered to go to Washington and take care of the whole problem. While still at the station, Holden gave the appellant $1,000.00 for travel expenses, after Lynn had rebuked Holden's offer to accompany him to Washington. On April 10, 1978, Lynn called Patterson and falsely reported that he had been held up by the "Mexican gang" while on his trip, and requested that Patterson arrange a meeting with Holden.

A luncheon meeting was held at Holden's residence, and the conversation was recorded on tape. Lynn suggested that if Holden and Birnberg did not cooperate they were likely to be the victims of further violence. The meeting culminated in Holden's giving Lynn $25,000.00. The appellant was arrested immediately after leaving Holden's residence, still in possession of the $25,000.00 as well as $400.00 of the $1,000.00 travel expense money.

The United States Attorney, for obvious reasons, recused himself. The Public Integrity Section of the Justice Department assumed responsibility for the investigation and the subsequent prosecution, which resulted in the appellant's conviction.

Lynn urges that the trial judge committed reversible error by admitting into evidence the testimony of several witnesses concerning out-of-court conversations with other witnesses. The discussion in the appellant's brief[3] is vague at best, making only limited reference to the transcript of the trial. The Federal Rules of Appellate Procedure require that

> [i]f reference is made to evidence the admissibility of which is in controversy, reference shall be made to the pages of the appendix or of the transcript at which the evidence was identified, offered, and received or rejected.

---

**3.** The relevant portion of the brief states as follows:

> During the trial, the Record reflects a preview of the testimony of the Government witnesses to come occurred. For example, when Birnberg, a key witness for the Government testified, he was allowed to testify to a hearsay conversation he had with Holden, another key Government witness, outside the presence of the Appellant, as well as what the Appellant had told Holden who in turn told Birnberg what Appellant had said. The Court's attention is directed to Volume III, commencing with page 170.
>
> Later when Birnberg was testifying, he was allowed, over objection, to testify as to what Patterson had told him. See Volume III, commencing with page 230, and see also page 22 of Volume IV.
>
> It would have been futile, for trial counsel to further object, thereafter, in light of the above rulings of the trial court judge. Thereafter, during the trial, essentially what the Government was able to do was to put on a

witness and have that witness testify to hearsay statements of another upcoming witness. Then, with that predicate laid, the other witness would then testify and, in like order, that witness would testify to hearsay statements of another upcoming witness. And etc.

> Thus, a form of reverse bolstering of an upcoming witness occurred in this cause.
>
> It is respectfully submitted that Rule 803 of the Federal Rules of Evidence was not meant to permit what occurred in this cause.
>
> Appellant's brief at 9ff.

The remainder of the brief consists of extensive quotations from *United States v. Mathis*, 559 F.2d 294 (5th Cir. 1977), and *United States v. Cain*, 587 F.2d 678 (5th Cir. 1979) (quoting the same language from *Mathis*), to the effect that Rule 803(24) of the Federal Rules of Evidence, one of the residual exceptions to the hearsay rule, should be narrowly construed. Rule 803(24) is not relevant to the issues raised in this case.

Rule 28(e). It has repeatedly been held that the burden of proving error is on the appellant, and that the court is "not required to search the record for error." *Holt v. Sarver*, 442 F.2d 304, 307 (8th Cir. 1971); *see also, e. g., United States v. Partin*, 552 F.2d 621 (5th Cir. 1977). We have nevertheless reviewed the record, despite the lack of guidance from counsel. *Compare Partin, supra*, 552 F.2d at 633.

In order to assure the orderly administration of trials and avoid needless retrial of cases, the Federal Rules of Evidence provide that a party must make a timely objection to the allegedly erroneous admission. Rule 103(a)(1). Counsel for the defendant objected the first time testimony of the conversations was admitted, and now maintains that once the court overruled the objection it would have been useless to further pursue the point. Transcript, vol. 3 at 170. However, the court, in overruling the objection, clearly stated that the out-of-court declarant's subsequent testimony would not save otherwise inadmissible hearsay. Vol. 3 at 172. Moreover, as the trial transcript shows, the trial judge informed counsel that his rulings were only directed to the evidence then in dispute, and that his decisions would each depend on the particular objection. Vol. 3 at 233. In view of the conclusions which we reach below, however, it is not necessary to decide whether the objections were adequately preserved.

■ Statements made to witnesses by the appellant were properly admitted for substantive purposes, since admissions by a defendant are not hearsay. Rule 801(d)(2). Rule 801 of the Federal Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Many of the out-of-court statements referred to by the witnesses were not even hearsay under this definition, but instead the testimony was admitted merely to show that the statements had been made. Many of the statements could not possibly have been true, at least not if the government's case was correct (for example, testimony that the appellant had told witnesses that he had solved Holden's problems).

■ The government assumed the burden of proving that the victim feared for his safety, an element of the crime of extortion. *United States v. Hyde*, 448 F.2d 815, 845 (5th Cir. 1971). Consequently, Birnberg's testimony regarding statements made by Holden to Birnberg is admissible on this issue, as is Holden's testimony of threats made directly to him.

> The victim's fearful state of mind is a crucial element in proving extortion. The testimony of victims as to what others said to them, and the testimony of others as to what they said to victims is admitted not for the truth of the information in the statements but for the fact that the victim heard them and that they would have tended to produce fear in his mind.

*United States v. Hyde, supra*, 448 F.2d at 845. *See*, Rules 801(c) and 803(3), Fed.R. Evid. The district court properly found that the testimony to which defense counsel first objected was admissible for this reason. Transcript, vol. 3 pp. 170ff. Similarly, testimony with respect to statements by Lynn, which he told the grand jury he had not made, was pertinent to demonstrate that they had in fact been made, not that they were true.

■■ The only prejudice suggested by the appellant is that this evidence resulted in a form of "reverse bolstering". Implicit in this argument is the admission that the declarants themselves testified at trial, either before or after the witnesses who testified about the conversations. In view of the fact that all declarants did testify in court, and were subject to rigorous and extensive cross-examination, and the jury heard recordings of many of the telephone calls which were discussed in the challenged testimony, we conclude that any erroneous admission of evidence, if such took place, was harmless, and therefore does not merit reversal. 28 U.S.C.A. § 2111; Rule 52, Fed. R.Crim.P. Where out-of-court statements are erroneously admitted but the declarant is available for cross-examination at trial,

any technical errors are harmless in light of such overwhelming evidence of guilt. *United States v. Rodriguez,* 509 F.2d 1342 (5th Cir. 1975); *United States v. Wilkerson,* 469 F.2d 963 (5th Cir. 1972) *cert. denied,* 410 U.S. 986, 93 S.Ct. 1515, 36 L.Ed.2d 184 (1973); *United States v. Williamson,* 450 F.2d 585 (5th Cir. 1971), *cert. denied,* 405 U.S. 1026, 92 S.Ct. 1297, 31 L.Ed.2d 486 (1972).

AFFIRMED.