UNITED STATES of America, Plaintiff-Appellee,

v.

Stephen Pfeiffer BROWN, Defendant-Appellant.

No. 82–1011.

United States Court of Appeals, Fifth Circuit.

Nov. 10, 1982.

Rehearing Denied Dec. 30, 1982.

---

J. A. Canales, Corpus Christi, Tex., for defendant-appellant.

Sidney Powell, San Antonio, Tex., for plaintiff-appellee.

Appeal from the United States District Court for the Western District of Texas.

Before RUBIN and JOHNSON, Circuit Judges, and VERON *, District Judge.

VERON, District Judge:

This appeal arises from a jury trial at which Stephen Pfeiffer Brown was found guilty on five counts of an indictment. Count Two charged conspiracy to possess cocaine, with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846; Counts Seven, Nine and Ten charged unlawful use of a communication device to facilitate the commission of a felony, in violation of 21 U.S.C. Section 843(b); and Count Eight charged aiding, abetting, counseling, inducing and procuring the possession, with intent to distribute, cocaine, in violation of 18 U.S.C. Section 2 and 21 U.S.C. § 841(a)(1).

We reverse and remand for new trial on Count Eight, and affirm the remaining counts.

On March 26, 1981, appellant was indicted on five counts of a thirteen count indictment returned by a federal grand jury for the Western District of Texas, San Antonio Division.

The indictment resulted from a Government investigation of a San Antonio drug ring which culminated in a series of wire-tap recordings in which appellant implicated himself as a cocaine source.

Appellant raises eight issues of error which we have organized into four sections:

1.  the jury charges;
2.  the scope of the conspiracy;
3.  the wire-tap and related evidence; and,
4.  the sufficiency of the evidence.

* District Judge of the Western District of Louisi-   ana, sitting by designation.

## I.

■ Appellant contends, and we agree, that the trial court committed plain error in failing to instruct the jury on each of the essential elements of the substantive offense in Count Eight (".. possession, with intent to distribute cocaine"). See *United States v. Leon*, 679 F.2d 534, 541 (5th Cir. 1982). We, therefore, reverse the conviction on Count Eight and remand for a new trial on that count alone.

■ Appellant next argues that the trial court failed to give the jury sufficient instructions as to each of the essential elements in Count Two ("conspiracy").[1] Appellant contends that the trial court's failure to charge the jury with the burden of finding that appellant "knowingly committed an overt act" in furtherance of the conspiracy before rendering a guilty verdict deprived appellant of substantive rights and should result in reversal of the conviction.

We reject appellant's argument. This court has expressly held that an indictment charging conspiracy to violate the Drug Control Act, 21 U.S.C. §§ 841 and 846, does not require allegation or proof of an overt act. *United States v. Rodriguez*, 612 F.2d 906, 919 n. 37 (5th Cir. 1980). The premise that an overt act need not be charged or proved logically compels the conclusion, and we so hold, that a jury instruction as to an overt act need not be given for an indictment charging conspiracy to violate the Drug Control Act, 21 U.S.C. §§ 841 and 846. See *United States v. Umentum*, 547 F.2d 987 (7th Cir. 1976).

■ Finally, appellant protests that he was subjected to double jeopardy because identical evidence was used to prove Count Two ("conspiracy") and Count Eight ("aiding and abetting..."). Appellant's protest is not justified. The offenses charged are separate crimes, with different proof requirements, and the jury was so instructed. Record, vol. VII, at 387. This court has held "..that there is no violation of a defendant's Fifth Amendment right against double jeopardy when convicted and punished for aiding and abetting as well as conspiring to commit the same offense even where the evidence adduced serves 'double duty' in establishing the elements of both offenses..." *United States v. Cowart*, 595 F.2d 1023, 1033 (5th Cir. 1979).

## II.

■ Appellant contends that the trial court erred in admitting testimony about two cocaine sales by appellant's co-conspirators to a Government agent. These sales took place at the inception of the Government's investigation, at which time, the appellant's identity was undisclosed. Appellant argues that because he was not charged with possession, as to these specific sales, the Government should not be permitted to use the sales as part of its conspiracy case. Appellant suggests that the Government's evidence only shows a series of isolated transactions, not an over-all conspiracy. Therefore, appellant reasons that testimony about the sales is both irrelevant to the issue of his involvement with the conspiracy, and highly prejudicial, because the testimony implies a broader conspiracy than the evidence warrants.

In order to define the scope of the conspiracy and appellant's role, we must first examine the undisputed factual background.

During September, 1979, Government agents began a covert investigation of a San Antonio drug ring which led to the conspiracy indictment of appellant and four others.[2]

1. The trial judge stated:

"What the evidence in the case must show beyond a reasonable doubt is: (1) that two or more persons in some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common and unlawful plan as charged in the indictment, and (2) that the defendant willfully became a member of such conspiracy." Record, vol. VII, at 381.

2. Co-conspirators:
   1. Samuel Regalado Flores—jumped bail and was a fugitive at time of trial;
   2. Carlos Moya Alva, Jr.—pled guilty to Counts 12 and 13 and the Government dismissed Count 2;

After infiltrating the ring by posing as a Chicago narcotics dealer, Agent Fuentes made two small sample purchases of cocaine from appellant's co-conspirators, Flores and Casas. These purchases are the subject of appellant's charge of error.

At trial, Agent Fuentes' testimony about the two sales was admitted, over objection, as conditionally relevant in establishing a factual chain leading up to appellant's exposure as the cocaine source.[3]  Fed.R.Evid. 104(b).

In reviewing the trial court's decision to admit Agent Fuentes' testimony, we are guided by the rule that a lower court has wide discretion in determining relevancy and should not be overruled in the absence of substantial abuse. See *United States v. Garr*, 461 F.2d 487, 489–90 (5th Cir. 1972), *cert. denied*, 409 U.S. 880, 93 S.Ct. 170, 34 L.Ed.2d 135 (1972). We find that the trial court did not abuse its discretion in ruling upon the admissibility of Agent Fuentes' testimony.

■ Once Agent Fuentes' testimony was admitted, the issue of multiple versus a single conspiracy became a factual question for the jury's determination. *United States v. James*, 576 F.2d 1121, 1126 (5th Cir. 1978).

■ We find that the record amply supports the jury's factual conclusion that the two earlier transactions, involving small amounts of cocaine, were only a prelude in the quest for over four pounds of cocaine.

### III.

Throughout the winter of 1979–80, Agent Fuentes continued active negotiations with the drug ring, predominately through Sam Flores. Although Agent Fuentes made purchases of heroin, marihuana, and small amounts of cocaine from Flores, the Government failed to make significant progress in locating the cocaine source. Therefore, in March, 1980, the Government resorted to a wire-tap interception of Flores' telephone. It was during this telephone interception that the cocaine source was discovered to be appellant, Stephen Pfeiffer Brown.

■ Appellant attacks the interception order, which authorized the wire-tap, for two reasons: first, appellant alleges that there was sufficient evidence to indict members of the drug ring prior to the wire-tap, therefore, further investigation was unnecessary; and, second, appellant argues that the Government was successful in gathering indictable information by normal investigative means, therefore, extraordinary means were unwarranted. Appellant's sole support for his conclusions is an opinion affidavit filed by John Pinckney, an attorney for appellant's co-indictee, Carlos Alva.

Against appellant's uncorroborated conclusions, the government offered testimony that it used a variety of investigative techniques—including surveillance, a pen register, and undercover drug purchases—before applying for the interception order. These efforts were unsuccessful in uncovering the cocaine source. Therefore, the Government determined, and the authorizing court found, that ordinary investigative techniques were insufficient and that a wire-tap order was justified.

Prior to trial, appellant asked for an evidentiary hearing on a motion to suppress the interception order. The trial court conditioned the granting of a hearing upon an initial showing by appellant that the Government's agents were not credible. Record, vol. VIII, at 170–171. Appellant, only repeating his allegation that the agents were liars, offered no new evidence.

We find no support for appellant's allegation of Government falsity and, therefore, we hold that appellant has failed to meet

---

3. Arturo Navarro Casas—pled guilty to Count 1 and the Government dismissed Count 2; and

4. Dagoberto Chapa Bravo—never arrested. Brief for appellant, at 3.

**3.** The trial judge stated:

".. I will let them [the Government] demonstrate how Mr. Fuentes came to meet Bravo, Flores, then move to Alva and turn to Casas and then Brown, the history of it."
Record, vol. III, at 396–97.

the threshold requirements for an evidentiary hearing set forth in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).[4]

Appellant's next challenge concerns the introduction of the wire-tap tapes at trial. The actual tapes heard at trial are composites prepared from one of two original sets. Because the originals run for over 69 hours and contain much irrelevant material, it was necessary for the Government to edit the tapes before presenting them at trial. However, no individual conversation was edited. In addition, written transcripts containing English translations of conversations in Spanish were given to the jury.

Appellant's claim of error is in two parts: first, he alleges that the original tapes were never introduced into evidence; and, second, he alleges that the transcripts were not adequately compared to the original tapes.

The record belies appellant's claim. Not only were the original tapes admitted into evidence, Record, vol. VII, at 208, but the transcripts were compared to the originals and found to be accurate. Record, vol. III, at 434–35. In addition, the trial court made the original tapes freely available, upon demand, to defense counsel. Record, vol. V, at 887.

▇▇ This court has expressly rejected any formalistic standard for the admissibility of tapes and transcripts. *United States v. Greenfield,* 574 F.2d 305, 307 (5th Cir. 1978), *cert. denied,* 439 U.S. 860, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978). After reviewing the record, we find that the Government met its burden in authenticating the tapes and transcripts used at trial.[5] *United*

States v. Biggins, 551 F.2d 64, 66 (5th Cir. 1977), also see *United States v. Cuesta,* 597 F.2d 903, 914 (5th Cir. 1979), *cert. denied,* 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979).

▇▇ During the course of the Government's testimony to establish a valid wire-tap, the trial court admitted the wire-tap authorization order into evidence. Record, vol. II, at 235. This was clearly error. Although the order was offered by the Government as foundation evidence to support their claim of a procedurally sufficient wire-tap, the content of the order was neither relevant nor probative to the jury's task of evaluating the actual wire-tap conversations.

Although we hold that the trial court erred in admitting the wire-tap order, we find that the error was harmless.

In applying the test for "harmless error" set forth in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), our primary question is what effect the error had, or reasonably may have had, upon the jury's decision. We must view the error, not in isolation, but in relation to the entire proceedings. *Id.* at 764, 66 S.Ct. at 1247.

While the order contained inadmissible hearsay, appellant was furnished with all the essential benefits guaranteed by the hearsay rule. For example, appellant was given both a right to confront, and an opportunity to extensively cross-examine, the out-of-court declarants. See *United States v. Williamson,* 450 F.2d 585, 591 (5th Cir. 1971), *United States v. Nolan,* 551 F.2d 266, 272 (10th Cir. 1977), *cert. denied,* 434 U.S.

---

4. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusionary and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks v. Delaware,* 438 U.S. at 171, 98 S.Ct. at 2684.

5. The Government established:
   1. how the wire-tap was initiated;
   2. how the equipment was operated;

3. the operator's competency and the recording equipment's fidelity;
4. the accuracy of the composite tapes; and,
5. a separate identification of each speaker by Agent Fuentes, who was with the conspirators during many of the taped conversations.
   In addition, while on the stand, appellant did not deny making his incriminating recorded statements. His defense was that his statements only concerned his bonding business and had nothing to do with narcotics.
   Record, vol. VII, at 58–218.

904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977). In addition, the order neither named appellant nor did it imply his connection with the conspiracy, except for a general "unknown persons" category.

In weighing the minimal potential for actual damage produced by this error with the substantial admissible evidence in support of the jury's verdict, we find that the error did not materially affect the jury's decision. We, therefore, are not moved to overturn the jury's verdict. See *United States v. Lynn,* 608 F.2d 132 (5th Cir. 1979), *United States v. Rodriguez,* 509 F.2d 1342 (5th Cir. 1975).

### IV.

Finally, appellant charges that the trial court erred in declining a motion for judgment of acquittal.

▪ Appellant contends: first, that there was insufficient evidence to convict him on Count Eight ("aiding and abetting"); and, second, that the trial court admitted co-conspirator hearsay linking appellant to the conspiracy without a sufficient preliminary showing of appellant's culpability by evidence independent of the hearsay testimony. See *United States v. James,* 590 F.2d 575 (5th Cir. 1979).

We have reversed Count Eight for previously cited reasons. However, for purposes of a re-trial, we will address appellant's objection of insufficient evidence to convict.

After viewing the evidence in the light most favorable to the government, we find that the jury could reasonably conclude that the evidence is inconsistent with any hypothesis of the accused's innocence. See *United States v. Ocanas,* 628 F.2d 353, 360 (5th Cir. 1980). Therefore, we hold that appellant's objection of insufficient evidence to convict on Count Eight is without merit. We shall now address the second part of appellant's charge.

▪ In response to Agent Fuentes' demand for a large quantity discount, appellant's co-conspirator, Sam Flores, made an intercepted call to appellant in the agent's presence. At the conclusion of the call, Flores told Agent Fuentes that the "cocaine source" approved the discount.

During Agent Fuentes' testimony at trial, appellant objected to the admission of Flores' statement as to the discount approval, as well as, to Agent Fuentes' subsequent testimony concerning other co-conspirator hearsay. In response to appellant's objection, the trial court made a finding, out of the jury's hearing, that the Government had met the *James* burden for introducing co-conspirator hearsay by establishing appellant's connection to the conspiracy by substantial evidence independent of the hearsay, itself.

Before ruling on appellant's objection, we must first review the Government's showing, independent of the hearsay, to determine whether there is enough evidence of appellant's connection with the conspiracy to at least take the question to the jury. *James,* 590 F.2d at 581.

While arranging the sale of a two-ounce cocaine sample to Agent Fuentes, which preceded the co-conspirator hearsay at issue, Flores made numerous intercepted telephone calls to his cocaine source. The voice on the other end of the Flores' calls was admitted by appellant to be his own.

On March 18, 1980, Flores told Agent Fuentes that he would meet his source in a short time to arrange the delivery of the cocaine sample. A short while later, Flores made an intercepted call to appellant which led to their later meeting at a convenience store approximately halfway between their residences. This meeting was photographed by Government agents. Government Exhibit, 5G.

On the following day, March 19, 1980, Agent Fuentes met with Flores to finalize the "sample" deal. After Flores stated that he had met with his source the night before and that the deal was on, Agent Fuentes delivered $4800 "up front" for the anticipated cocaine.

Shortly after this meeting, Flores telephoned appellant. Appellant returned the call and agreed to meet Flores. A little while later, Agent Fuentes received a call

from Flores inviting Agent Fuentes to pick-up the cocaine at Flores' apartment. During this pick-up, Flores made the "discount approval" telephone call to appellant.

In ruling on appellant's objection, we will not overturn the trial court's admission of co-conspirator hearsay unless there was clear error. *United States v. Hawkins,* 661 F.2d 436, 450 (5th Cir. 1981).

After reviewing the trial court's decision to allow Agent Fuentes to further testify, we can find no such error. There was sufficient evidence, independent of the co-conspirator hearsay to take the question of conspiracy to the jury. Therefore, we refuse to overturn the trial court's decision to decline the appellant's motion for judgment of acquittal on the conspiracy count.

The judgment of the district court is REVERSED and REMANDED for new trial on Count Eight, and AFFIRMED on Counts Two, Seven, Nine, and Ten.