Aaron Lee **GEORGE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–96–088 CR.

Court of Appeals of Texas,
Beaumont.

Submitted May 1, 1997.
Decided Jan. 21, 1998.

OPINION

STOVER, Justice.

To address certain concerns raised in a motion for rehearing submitted by the State, we withdraw our opinion of November 5, 1997, and substitute the following in its place.

The jury found Aaron Lee George guilty in a two-count indictment for murder and for injury to a child. Appellant was found guilty on both counts. Punishment was assessed at sixty years confinement for the offense of murder and forty years for the offense of injury to a child. Pursuant to TEX. PEN. CODE ANN. § 3.03 (Vernon 1974), the sentences run concurrently. The record reveals that the six week old child, Alexander George, died from brain hemorrhages which the State alleges were caused by appellant's intentional shaking of the infant. Appellant, who is the child's father, admitted he shook the infant, but that he did so only in an effort to resuscitate the infant after he (appellant) discovered the child was not breathing. The sufficiency of the evidence was not challenged.

In his first point of error, appellant contends the trial court erred in admitting evidence of prior injuries to the child because there was no evidence connecting the prior injuries to appellant. This evidence, consisting of references to prior injuries of broken ribs and brain hemorrhages,[1] was contained in medical records in State's Exhibit No. 3. The State argues the evidence was admissible to show the medical examiner's findings and the "complete medical diagnosis" of the child. Appellant contends that since there was no evidence connecting him to these prior injuries, they were inadmissible.

In reviewing the autopsy report contained in Exhibit No. 3, which consisted of the

Dexter M. Patterson, The Woodlands, for appellant.

Michael McDougal, Dist. Atty., Gail Kikawa McConnell, Asst. Dist. Atty., Conroe, for State.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

---

1. The State argues that Appellant's complaint on appeal does not comport with his objection at trial. The State incorrectly argues that Appellant, at trial, objected only as to the prior broken ribs—not the prior hemorrhages. Within defense counsel's objection to the admission of Exhibit No. 3, we find the following statement: "Where you face a serious problem on these is that they are talking about broken ribs and the prior hemorrhage, brain hemorrhages. They are saying I think there are 21 broken ribs, and prior brain hemorrhages,.... There is no way that these records are, any way can connect this defendant with that extraneous offense. That's what you're dealing with is an extraneous offense." Appellant's objection clearly encompassed both types of injuries and was adequate to apprise the trial court and opposing counsel of the nature of the complaint. *Ex parte Little,* 887 S.W.2d 62, 65 (Tex.Crim.App.1994); *Lankston v. State,* 827 S.W.2d 907, 909 (Tex.Crim.App.1992); TEX.R.APP. P. 33.1.

medical records of the child's treatment at the University of Texas Medical Branch (UTMB) in Galveston, we find the following conclusions by the pathologist:

> Findings at autopsy indicate that the immediate cause of death was a result of severe global ischemic encephalopathy—"brain death". Other findings at autopsy included recent subgaleal hemorrhages over the sagittal and lambdoid suture lines, widespread multifocal resolving and possibly recent subdural hemorrhages involving the brain, widespread multifocal patchy subarachnoid hemorrhages involving the brain, bilateral extensive retinal hemorrhages with focal retinal detachment on the left, epidural and subarachnoid hemorrhage involving the spinal cord, and multiple posterior and lateral healing rib fractures, bilaterally, with flaring of the costochondral junctions.

As noted on the opening page of the autopsy report found in Exhibit No. 3, the pathologist's conclusion as to the cause of the changes in the infant's brain death was "shaking trauma ('shaken baby syndrome') indicating homicide as the mode of death." The report continues:

> The other issue in this case is the presence of findings which indicate child abuse, that is, the above described hemorrhages and retinal detachment, the rib fractures, and numerous resolving subdural hemorrhages. The rib fractures were all of the same age—approximately 2–3 weeks old. While it is not possible to date healing fractures to the day, the fractures show progress in healing that make it impossible that they occurred during resuscitation of the infant. Furthermore, it is reported that rib fractures in this age group not only don't occur as a result of CPR (even by a novice), but that they are specific for child abuse if bone disease and accidental trauma have been ruled out. The pattern of posterior fractures along with the flaring of the costochondral junctions indicate that the fractures resulted from anterior-posterior compression of the infant, possibly augmented by shaking. That is, the infant was tightly

squeezed or compressed. This would require an external force. No history of an incident was reported to explain these fractures, and a thorough study of the ribs and other bones showed no evidence of bone or connective tissue disease that would explain the fractures. In any case, however, the pattern of the fractures indicates child abuse. While resolving subdural hematomas are not by themselves indicative of child abuse, their presence in such abundance and in the absence of disease makes child abuse the most likely explanation. The age of these hemorrhages is approximately the same age as the rib fractures.

At trial and on appeal, the State contended the evidence of prior injuries was not offered to prove any exception under Tex.R.Crim. Evid. 404(b), but instead was offered under Tex.R.Crim. Evid. 105. In offering Exhibit No. 3 at trial, the prosecutor commented:

> [PROSECUTOR]: ... I would agree with counsel for the defendant that Judge Martin [2] ruled that evidence of extraneous offense was not going to come in in this case. However, there are other reasons for the admissibility of these records. Under Rule Criminal Evidence 105, a piece of evidence that may be inadmissible for one purpose but admissible for another can come in if it's relevant.
>
> THE COURT: And not overprejudicial to the defendant.
>
> [PROSECUTOR]: And you can give a limiting instruction if requested by the defense on the admissibility, a reason for that coming in. I submit to the Court that these records are part and parcel of the condition of the child at the time of the admission in UTMB, Galveston. They're admissible for that purpose. They're admissible to show the child's condition at that time, not that this man inflicted the injuries prior to that time, but to show the complete medical diagnosis of that child at that time.
>
> And also, the cause of death. It is in the autopsy report as the finding of the medical examiner at that time, not as the actual

---

2. The record reflects that Judge John Martin presided over a portion of the case dealing with pretrial motions. Judge Fred Edwards presided over the trial itself.

cause of death, the prior hematomas, the prior brain hemorrhage and the prior rib injuries, but as a part and parcel of the doctor's findings on his pathology report. After the evidence had been offered by the State, the trial judge reviewed Exhibit No. 3 in-camera. Without explanation or limiting instructions to the jury, he admitted the exhibit in its entirety over appellant's objection.

■ The State emphasizes that Exhibit No. 3 was offered pursuant to Texas Rule of Criminal Evidence Rule 105. Rule 105 states "[w]hen evidence which is admissible as to one party or for one purpose but not admissible to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." TEX. R.CRIM. EVID. 105(a). However, prior to admitting the evidence with a limiting instruction under Rule 105, the court must determine if the evidence meets the definition of relevancy under TEX.R.CRIM. EVID. 401 and also if the evidence requires exclusion under TEX.R.CRIM. EVID. 403. Rule 401 defines relevance broadly and "[w]hether particular evidence meets the definition will not always be cut and dried." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990). We cannot say that the trial court's ruling on relevancy was outside the zone of reasonable disagreement. However, we are led to the conclusion, under Rule 403, that "the danger of unfair prejudice substantially outweighed the probative value of the proffered evidence," and therefore declare that the trial

court erred in failing to exclude it. *Id.* at 392. Noting the voluminous content of Exhibit No. 3, the fact that it was laden with evidence of the prior injuries, in addition to a pre-trial Motion in Limine ruling excluding the extraneous evidence, we construe the evidence as being of such a prejudicial nature that a limiting instruction to disregard it for any but the proffered purpose would not have been efficacious. Thus, affording all due deference to the trial court's decision, we find the evidence to be substantially more prejudicial than probative and as such it should have been excluded.

■ We conclude Exhibit No. 3 contains references to extraneous offenses or other "crimes, wrongs, or acts" [3] that are not part of the offenses with which appellant is charged. Prior to the admissibility of any extraneous offense, the trial court must be satisfied "that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense." *See Harrell v. State*, 884 S.W.2d 154, 160 (Tex.Crim.App.1994). There the court held that "given that the standard for jury consideration of extraneous offenses is well-settled as proof beyond a reasonable doubt, we hold that the standard of admissibility for extraneous offense evidence is also proof beyond a reasonable doubt." *Id.* at 159. Thus, the Court of Criminal Appeals in *Harrell* clarified the quantum of proof necessary for admission of extraneous offenses, which, according to appellant in point of error one, has not been met in this case.[4]

---

3. *See* TEX.R.CRIM. EVID. 404(b).

4. In its motion for rehearing, the State submits the majority erred by fashioning a per se rule out of *Harrell v. State*, 884 S.W.2d 154 (Tex.Crim. App.1994) and shows a misunderstanding of the proof required in child homicide cases. The State quotes *Harrell* where the Court of Criminal Appeals states "under rule 104(b) the trial court must ... make an initial determination as to the relevancy of the evidence, dependent 'upon the fulfillment of a condition or fact.'" *Id.* at 160.

In *Harrell*, the conditional fact was whether the appellant committed the extraneous offenses depicted in the proffered exhibit. Likewise, in the present case, the State argues, the conditional fact is whether George caused the prior injuries of the child as depicted in State's Exhibit No. 3. Citing *Estelle v. McGuire*, 502 U.S. 62, 69–71, 112 S.Ct. 475, 481, 116 L.Ed.2d 385 (1991), the

State argues that in shaken baby cases there is no conditional fact because the evidence of other intentional injuries to the baby is relevant to show that the baby's injuries were not accidental or the result of natural causes such as SIDS. Thus, the State contends, the court misunderstands the proof required in abused child homicide cases.

The State further cites case law from other states where courts have held admissible evidence of prior injuries to a child, not indicating wrongdoing by the defendant, but describing the nature of the injuries as intentionally caused. Finally, the State points to Texas case law where prior injuries were relevant to show intentionally inflicted injuries. The State concludes by stating Exhibit No. 3, containing the evidence of the prior injuries, was relevant to show the baby died from an intentional act, and because Exhibit No. 3 is relevant to an element of the offense, there is

Our review of the record indicates the quantum of proof necessary for admission of the prior injuries was not satisfied. Testimony at trial reveals that three other persons besides appellant were around the child from July 29, 1992, the date of the child's first checkup, until August 15, 1992, the date of the offense; those three are Jennifer George, the baby's mother, Beverly George, the paternal grandmother, and Morris Istre, the boy friend of Beverly George. There was testimony that Beverly George assisted in the child's care, and that Istre had held and played with the infant. Dr. Luquette, the pathologist who described the child's prior injuries at trial, testified he did not know who caused the baby's broken ribs; however, their presence prompted him to test for the presence of "brittle bone disease" during the autopsy. Finding no disease, the doctor concluded the prior broken ribs showed that someone intentionally caused the injury to the baby. There is no evidence, however, that appellant broke the child's ribs or was in any way responsible for their occurrence. As noted above, the standard of proof for admission of those prior injuries is proof beyond a reasonable doubt. When that quantum of proof is absent, as is true in this case, the trial court abuses its discretion and commits error in admitting the evidence.

## HARM ANALYSIS

Having determined the court erred in allowing the extraneous offense into evidence, we must determine whether the error was harmless. To determine if the erroneous admission of evidence amounts to reversible error we apply Rule 44.2 of the Texas Rules of Appellate Procedure.[5] If an error is of a constitutional nature, TEX.R.APP. P. 44.2(a) requires reversal of a "judgment of convic-

tion or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Under Rule 44.2(b) any other error, defect, irregularity, or variance not affecting substantial rights must be disregarded. Having found no constitutional error, we apply Rule 44.2(b) and, accordingly, must determine if appellant's substantial rights have been affected.

■ Although the Court of Criminal Appeals has not yet given guidance on how to analyze cases reviewed under 44.2, we note that the language of 44.2(b) mirrors that found in Rule 52(a) of the Federal Rules of Criminal Procedure.[6] Under Rule 52(a), errors occurring during a criminal trial are not grounds for reversal unless they affect the substantial rights of the accused. See FED. R.CRIM. P. 52(a); see also United States v. Brown, 897 F.2d 162, 163 (5th Cir.1990). The United States Supreme Court thoroughly considered Rule 52(a) in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), adopting a harm analysis standard used by federal courts. Thus, we will look to Kotteakos and its progeny for guidance in applying 44.2(b).

■ In a harmless error examination, as set forth in Kotteakos, "our primary question is what effect the error had, or reasonably may have had, upon the jury's decision." United States v. Bernal, 814 F.2d 175, 184 (5th Cir.1987); United States v. Brown, 692 F.2d 345, 350 (5th Cir.1982); see also King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997) ("A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.") It must be determined "whether

no pre-condition to be fulfilled to show the evidence is relevant as required by *Harrell*.

Assuming arguendo, the evidence of prior injuries may have been probative on the question of intent or that the injuries were "intentionally caused," the record before us indicates this was not an issue at trial; Exhibit No. 3 was not proffered for such purpose. It was offered merely to show the medical condition of the child at the time of admission to the hospital. The issue of intent was not a reason propounded by the State at trial for admissibility. These contentions in the State's Motion for Rehearing "seem to be

a rather transparent attempt at resurrecting admissibility at the eleventh hour." *See Cooper v. State*, 901 S.W.2d 757, 761 (Tex.App.—Beaumont 1995), *pet. dism'd, improvidently granted*, 933 S.W.2d 495 (Tex.Crim.App.1996).

**5.** The new rules of appellate procedure became effective September 1, 1997.

**6.** The Comments following rule 44.2 recognize that 44.2(b) "is taken from Federal Rule of Criminal Procedure 52(a) without substantive change."

the inadmissible evidence actually contributed to the jury's verdict." *United States v. Skipper,* 74 F.3d 608, 612 (5th Cir.1996). The error must be viewed, not in isolation, but in relation to the entire proceedings. *Bernal,* 814 F.2d at 184; *United States v. Brown,* 692 F.2d 345, 350 (5th Cir.1982); *Kotteakos,* 328 U.S. at 764, 66 S.Ct. at 1247. As explained in *Kotteakos* :

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand.... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Id.,* 328 U.S. at 764–65, 66 S.Ct. at 1248, 90 L.Ed. at 1566 (citations omitted).

### Application of Harm Analysis

*Waiver—Failure to Object*

■ The State argues Appellant's substantial rights were not affected by emphasizing that Appellant waived error to the admission of the prior injury evidence when he failed to object to testimony later adduced at trial concerning the rib fractures.[7] The testimony in question involved the re-direct examination by the State of Dr. Luquette, a witness for the State. During direct examination of Dr. Luquette, testimony was given, over objection, of rib fractures. During cross-examination, defense counsel questioned the Doctor about the fractures in an effort to clarify and rebut earlier testimony. On re-direct,

Dr. Luquette again gave testimony regarding the broken ribs. It is this latter testimony to which defense counsel failed to object.

The prior injury evidence was of a continuing concern throughout the trial. Objections to the evidence began prior to the trial where defendant's Motion In Limine was sustained. Then when the State sought to admit Exhibit No. 3, the medical records, defense counsel vehemently objected because of the extraneous evidence content. Defense counsel objected repeatedly when the State sought admission of evidence which arguably contained evidence of the prior injuries. Twice he lodged a request for a running objection.

■ The purpose of an objection is twofold: (1) to notify the trial judge and the State of the complaint, and (2) to preserve a complaint for appellate review. *See Ex parte Little,* 887 S.W.2d 62, 65 (Tex.Crim.App. 1994); Tex.R.App. P. 33.1. Generally, "error regarding improperly admitted evidence is waived if that same evidence is brought in later by the defendant or by the State without objection." *See Rogers v. State,* 853 S.W.2d 29, 35 (Tex.Crim.App.1993), citing *Ethington v. State,* 819 S.W.2d 854, 858–60 (Tex.Crim.App.1991). A party is required to object each time inadmissible evidence is offered. *Ethington,* 819 S.W.2d at 858.

■ One exception to the "contemporaneous objection" rule is the "running objection." A continuing or running objection may properly preserve error and in some situations may actually be desirable. *Id.* at 858–59. As was the situation here, it is disruptive for the trial judge to force an attorney to make the same objection after each question of opposing counsel simply to receive the same ruling. *Id.* Thus, a running objection can serve a legitimate function in promoting the orderly progression of the trial by preventing the need for repeated objections.

---

7. Additionally, the State contends appellant conceded the admissibility of the prior injuries by not complaining on appeal of other evidence later introduced at trial, evidence the State argues is the same type of evidence. This evidence consisted of the autopsy report and photographs of x-rays of the baby's rib cage. Appellant's argument in support of his first point of error focused primarily upon Exhibit No. 3 which consisted of the medical records of the deceased child. However, the point of error referred broadly to prior injury evidence. We construe Appellant's point of error expansively, encompassing the extraneous nature of the prior injuries and not limiting it to Exhibit No. 3.

During the questioning of Dr. Sanders, a prior witness, Defense counsel requested a running objection to the prior rib injuries: "Could we have a running objection to any questions relating to those injuries, being the alleged broken bones?" During the direct examination by the State of Dr. Luquette, the defense requested: "Could we have a running objection to all this Shaken—" after which he was interrupted mid-sentence by the trial judge. The court granted the running objections in both instances.

 The Court of Criminal Appeals has suggested that it may be inappropriate to allow a running objection to preserve error on a subject matter over too broad a time or over different witnesses. *Goodman v. State*, 701 S.W.2d 850, 863 (Tex.Crim.App.1985), *rev'd on other grounds, Ex parte Goodman*, 816 S.W.2d 383 (Tex.Crim.App.1991). Recently, however, the Court has reiterated that "there are situations where a running objection, made with the express permission of the trial judge, much more appropriately contributes to the orderly flow of trial than does a redundant and disruptive series of individual objections." *Ford v. State*, 919 S.W.2d 107, 113 (Tex.Crim.App.1996) (running objection granted for prior witness sufficient to preserve error regarding testimony of all witnesses pertaining to same type of evidence).

After reviewing the statements by counsel and the court pertaining to the prior injury evidence, it is clear that the trial judge and the State were notified of the complaint. We conclude the combination of Defense Counsel's efforts, including the pre-trial motion, numerous objections at trial to the prior injury evidence, along with the requests for running objections was amply sufficient to preserve error.

*Impact of Prior Injury Evidence*

 The impact of the prior injury evidence on the jury looms large in this case. Evidence of the child's prior broken ribs and brain hemorrhages, particularly in a case where the father has been charged with murder of his own child by shaking the baby to death, is strongly suggestive of the father's having repeated the conduct and of having caused the child's death. We further note

the State referred to the broken ribs during final argument when the prosecutor declared as follows:

He's not charged with the ribs. That was given to you for a limited extent and it's in the Court's Charge. *It shows you something. You know what it shows you? It shows you exactly what the evidence tells you. The intent.* He wants you to sit there and think, my intent when I walked in there, I'm Aaron George, my intent is to go murder my child when I walk in that room. That's not what the Court says in the Charge. That's not what the law is. I intended to cause the result. I was going to shut my baby up. And I intended to shut that baby up and I intended to shut him up and I did it.

(emphasis added). The State's jury argument again emphasized the prior injuries, this time as evidencing the intent of appellant to injure the child. Appellant contends that he shook the child in an effort to resuscitate him and that he never intended to cause the infant's death. The prior injury evidence undermines that defense, as well as appellant's credibility.

In light of the entire record and based on the nature of the error, the emphasis placed on the evidence by the State, the collateral implications, and the weight the jury would probably have placed on the evidence, we cannot say with fair assurance that the error "did not materially affect the jury's decision." *Brown*, 692 F.2d at 351. Point of error one is sustained.

Having sustained point of error one, we do not address the remaining points. The judgment is reversed, and the case is remanded to the trial court for a new trial.

REVERSED AND REMANDED.

WALKER, Chief Justice, dissenting.

Based on the following, I feel appellant's first point of error should be overruled, thus my respectful dissent.

Appellant argues the trial court erred in admitting medical records which contained evidence of prior injuries to the child, precisely evidence of prior broken ribs and prior

brain hemorrhages. This evidence was introduced by the State as Exhibit No. 3. Appellant argues the evidence is an extraneous offense which cannot be tied to the defendant and therefore the trial court erred in admitting the evidence. The State replied the evidence was not being introduced as an extraneous offense but instead was offering it under TEX.R.CRIM. EVID. 105. The State argues the evidence was relevant as part and parcel of the medical records to show the child's medical condition.

The record shows us the following statements transpired between the trial court, prosecutor, and defense counsel regarding the evidence:

[DEFENSE COUNSEL]: ... Where you face a serious problem on these is that they are talking about broken ribs and the prior hemorrhage, brain hemorrhages. They are saying I think there are 21 broken ribs, and prior brain hemorrhages, I think I'm using the right medical word. There is no way that these records are, any way can connect this defendant with that extraneous offense. That's what you're dealing with is an extraneous offense.... So now you're in the position of admitting the records, we are asking—We don't have a problem with the records going into evidence except where they talk about prior broken ribs and prior brain hemorrhages. That is an extraneous offense that they cannot tie this defendant to. Could they do that, it might become relevant, which is the first test you have under, whatever it is, *Montgomery* or whatever the extraneous rule cases are. You got to show relevance, and you've got to show a sort of special relevance that it's not going to prejudice the jury. But more importantly, in this case, you got to show that the defendant can be connected at all to the extraneous offense. And that's where they fail completely.

THE COURT: How is this an extraneous offense? There could be multiple reasons why there are broken ribs or previous hematoma. You're assuming the worst, is what you're telling me. You're assuming that the inference that the jury might take or that the implication is that there is a previous beating of some sort, but is there anything in these records, without me looking at them, that says, that insinuates that, or is he just reflecting that that is found? There's a big difference between insinuation and paranoia and fear that that's what the case is.

What do the records say?

[DEFENSE COUNSEL]: ... [O]ur point is this, it is an extraneous offense, period. It will prejudice this jury because they will assume that the defendant broke the ribs. And they're not tied—That's why Judge Martin, [the former Judge ruling on pre-trial motions], ruled they are not admissible. They are not admissible because you can't tie the broken ribs to him.

THE COURT: Is the sole purpose of this offer to get in those two pieces of information to the jury?

[PROSECUTOR]: No, Your Honor, it's not. I would agree with counsel for the defendant that Judge Martin ruled that evidence of extraneous offense was not going to come in in this case. However, there are other reasons for the admissibility of these records. Under Rule Criminal Evidence 105, a piece of evidence that may be inadmissible for one purpose but admissible for another can come in if it's relevant.

THE COURT: And not overprejudicial to the defendant.

[PROSECUTOR]: And *you can give a limiting instruction if requested by the defense on the admissibility*, a reason for that coming in. I submit to the Court that these records are part and parcel of the condition of the child at the time of the admission in UTMB, Galveston. They're admissible for that purpose. They're admissible to show the child's condition at that time, not that this man inflicted the injuries prior to that time, but to show the complete medical diagnosis of that child at that time. [emphasis added]

And also, the cause of death. It is in the autopsy report as the finding of the medical examiner at that time, not as the actual cause of death, the prior hematomas, the prior brain hemorrhage and the prior rib

injuries, but as a part and parcel of the doctor's findings on his pathology report.

THE COURT: Have you marked the exhibit where these objectionable areas are located? It looks to be quite voluminous.

[DEFENSE COUNSEL]: I have not marked it on his. I think I can—I think I have marked it on my copy, but I'll have to go through this page by page.... I'm not fighting whether it's an official record or not.

THE COURT: You're fighting about the relevancy being so prejudicial to your client that it prevents him from having a fair trial. I'll look at it.

....

THE COURT: I will look at this and look at these areas you're talking about. Is it imperative you have a ruling this minute?

[DEFENSE COUNSEL]: No, Your Honor, it is not.

THE COURT: I'll take [the] documents on an in-camera review and give you my ruling later.

....

[DEFENSE COUNSEL]: May I state something for the Record? I've got an additional objection to State's No. 3. I object under 404B.

THE COURT: All right.

[DEFENSE COUNSEL]: I just wanted to get that in.

THE COURT: I will take it under advisement.

[Following an in-camera review, at the next morning session, the following proceedings were held].

THE COURT: ... Exhibit No. 3, the University of Texas Medical Branch of Galveston on the victim, George, Alexander, the objection being as to the medical history, record of prior broken ribs and hematomas, the Exhibit No. 3 is admitted in its entirety over the objection of the defendant.

[DEFENSE COUNSEL]: I have additional objections I wanted to make before you make your ruling. Can I make those for the Record as to [Exhibit No. 3]?

THE COURT: ... Three is going to be admitted unless you've got some other objection.

[DEFENSE COUNSEL]: ... On Exhibit No. 3, the medical records, defendant objects because it violates Rules 401, 402, 403, 404(b), and also violates the Texas and Federal Constitution, right to confrontation. Also, that it's hearsay. Also, that it's irrelevant. Also, that it's cumulative. Also that its prejudicial value outweighs the probative value. And also as the defendant cannot be connected to the broken ribs under *Harris versus State*, 738 S.W. 2nd, 207; *Thompson versus State*, 615 S.W. 2nd, 760, and *McGee versus State*, 725, S.W. 2nd, 362. And those are our objections.

THE COURT: Those objections are overruled.

Following the adverse ruling on his objection, defendant could have requested a limiting instruction. He failed to do so. Instead, he waited and requested that a limiting instruction be included in the jury charge.

Rule 105(a) of the Texas Rules of Criminal Evidence sets out the circumstances under which a limiting instruction should be given:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; *but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.*

TEX.R.CRIM. EVID. 105(a) [emphasis added]. Pursuant to this rule, limiting instructions "curb the improper use of evidence" restricting the evidence to its proper scope. *Rankin v. State*, No. 0374–94, 1996 WL 165014, *5, —— S.W.2d ——, —— (Tex.Crim.App. April 10, 1996)(not yet released for publication). Where evidence is offered and admitted for a limited purpose, the party opposing admission of evidence has the burden of requesting a correct limiting instruction. *Johnson v. State*, No. 72046, 1997 WL 209527, *11, —— S.W.2d ——, —— (Tex.Crim.App. April 30, 1997)(not yet released for publication); *Lar-*

*son v. Cactus Utility Co.,* 730 S.W.2d 640, 642 (Tex.1987).

The defendant should have requested a limiting instruction when the evidence was admitted. Upon proper request, under Rule 105, a limiting instruction must be given when the evidence is admitted. *Rankin,* 1996 WL 165014, at *7, at ——; *see also Jones v. State,* 944 S.W.2d 642, 653 (Tex. Crim.App.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). "[L]ogic demands that the instruction be given at the first opportunity." *Rankin,* 1996 WL 165014, at *5, at ——. " 'Once evidence is received without a proper limiting instruction, it becomes part of the general evidence in the case and may be used as proof to the full extent of its rational persuasive power.' " *Johnson,* 1997 WL 209527, at *11, at —— (*quoting Garcia v. State,* 887 S.W.2d 862, 878 (Tex.Crim.App.1994)). As stated by the Court of Criminal Appeals in *Rankin:*

> Jurors cannot be expected to know exactly how to use the evidence unless we tell them, nor can we guarantee that they will "remain open-minded until the presentation of all of the evidence and instructions …" *See Morrison v. State,* 845 S.W.2d 882, 887 (Tex.Crim.App.1992). Additionally, we cannot tell how jurors have used the admitted evidence. Thus, the possibility exists that, unless we instruct the jury on evidence concurrently with its admittance, jurors may, unbeknownst to us, use that evidence improperly by forming an indelible perception of the defendant that will work unfairly to his inevitable detriment.
>
> . . . .
>
> Limiting instructions given for the first time during the jury charge thus do not constitute an efficacious application of Rule 105(a) since it allows for the possibility that evidence will be used improperly in clear contravention to the purpose of the rule.

*Rankin,* 1996 WL 165014, at *5–6, at ——.

Although it is clear from the record the defense was concerned with those parts of the medical record pertaining to the prior broken ribs and brain hemorrhages, the defense failed to request a limiting instruction at the time the evidence was admitted. As a result, the trial court was not informed as to what limitation defendant desired to have placed on the evidence. Therefore, because appellant failed to request instructions limiting the jury's consideration of the medical records, he has waived any complaint to the general admission of the evidence. *See Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361, 365 (Tex.1987).