UNITED STATES of America, Appellee,

v.

**Benzion GOLOMB,**
**Defendant-Appellant.**

**No. 590, Docket 84–1248.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 8, 1985.

Decided Jan. 28, 1985.

Stanley M. Meyer, New York City (Meyer, Light & Diesenhouse, Brooklyn Heights, N.Y., on brief), for defendant-appellant.

Kenneth Roth, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., Stacey J. Moritz, Asst. U.S. Atty., New York City, on brief), for appellee.

Before NEWMAN, PRATT and PECK,* Circuit Judges.

JON O. NEWMAN, Circuit Judge:

The only issue of substance raised on this appeal concerns the imposition of 11 sentences consecutively for an aggregate sentence of 26 years upon a first offender convicted of a series of property crimes. Benzion Golomb appeals from a judgment of the District Court for the Southern District of New York (Mary Johnson Lowe,

* The Honorable John W. Peck of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

*Judge* ) convicting him, after a jury trial, on 12 of 13 counts submitted to the jury.

· The charges were based on Golomb's extensive activity as a dealer in stolen property. The evidence overwhelmingly established that he was the principal in a "fencing" operation that purchased items stolen during a series of residential and commercial burglaries. Count 1 charged a conspiracy to commit various substantive offenses relating to the fencing operation. 18 U.S.C. § 371 (1982). Counts 2 and 3 charged receipt of stolen Treasury checks. 18 U.S.C. § 641. Count 4 charged receipt in interstate commerce of the proceeds of a series of residential burglaries. 18 U.S.C. § 2315. Counts 5 and 6 charged mail fraud based on Golomb's role in assisting two of his confederates fraudulently to apply for unemployment benefits. 18 U.S.C. § 1341. Counts 7 through 11 charged interstate transportation of five checks that had been stolen and forged. 18 U.S.C. § 2314. Count 12 charged use, in transactions affecting interstate commerce, of a stolen credit card. 15 U.S.C. § 1644(a) (1982). Golomb was acquitted on a count charging bribery of a witness. 18 U.S.C. § 201(d).

## I. The Conviction

■ Golomb's challenges to his conviction are without merit. Initially he contends that the counts were improperly joined in a single indictment, *see* Fed.R. Crim.P. 8(a); and that severance was improperly denied, *see id.* 14. Plainly all of the counts involving stolen property arose out of a common scheme and were properly joined. *See United States v. Gordon,* 655 F.2d 478, 484–85 (2d Cir.1981); *United States v. Werner,* 620 F.2d 922, 926–27 (2d Cir.1980). Though the mail fraud counts relating to the application for unemployment benefits encompassed conduct different from the receipt of stolen property, their relationship to the overall scheme, sufficient to permit joinder, was made manifest by the evidence that Golomb assisted the fraud in return for his confederates' agreement to continue supplying stolen property. It was not an abuse of discretion to deny severance because of claimed prejudice. *See United States v. Cunningham,* 723 F.2d 217, 230 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984).

■ There was no violation of the Speedy Trial Act. 18 U.S.C. § 3161 et seq. (1982). The District Court properly concluded that a brief period of time was excludable in the interests of justice because of the need to complete ongoing grand jury investigations that were unraveling Golomb's complex transactions. *Id.* § 3161(h)(8)(B)(ii). *See United States v. Ruggiero,* 726 F.2d 913, 925 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984).

Golomb next contends that the Government breached a limited use immunity agreement. After indictment, Golomb, accompanied by his counsel, voluntarily agreed to be interviewed by an Assistant United States Attorney on September 6, 1983. The interview was conducted pursuant to a written agreement signed by Golomb, his lawyer, and the prosecutor on September 6. The agreement provided that "[w]ith respect to the meeting [between the prosecutor and Golomb] to be held on September 6, 1983" no statements made by Golomb would be used in the Government's direct case, but that information derived from such statements could be used without limitation and the statements themselves could be used in cross-examination of the defendant or in the Government's rebuttal case.

At trial the prosecution did not offer any statement of the defendant made at the September 6 meeting. However, testimony was elicited from a government agent concerning statements made by Golomb, with his counsel present, on November 29, 1983, while the agent was obtaining the defendant's fingerprints. No objection was made that these statements violated the September 6 agreement. Another agent testified to statements made by Golomb, with his counsel present, at a meeting with the prosecutor on December 29, 1983. After this testimony, defense counsel moved to exclude Golomb's statements of November

29 and December 29, claiming violation of the September 6 agreement. The District Judge deferred a ruling, pointing out that if the defendant testified, as his counsel's opening statement had represented he would, any question of compliance with the September 6 agreement would disappear. The defendant did testify, and the use immunity claim was not further pursued.

■ In some circumstances, there might be force in the defendant's contention that once the Government makes a use immunity agreement, even though limited to statements obtained on a specified date, the elicitation of statements from the defendant at a subsequent meeting should be preceded by a caution that the agreement is no longer in effect. That would avoid ambiguity as to whether or not the subsequent meeting was a continuation of the initial meeting. There is no ambiguity in this case, however, since the interval between the meeting specified in the agreement and the next occasion when defendant's statements were obtained was nearly two months. Moreover, the statements were properly admissible, once the defendant testified, even if the agreement were applicable.

■ Finally with respect to the conviction, there is no merit to defendant's claim that the trial judge erred in declining to interrupt jury deliberations to permit the introduction of photographs taken as a result of a suggestion by the judge. Though the photographs would have supported the defendant's version of a dispute in the evidence, the dispute concerned a minor point, the defense was responsible for the delay in obtaining the photographs, and a judge has wide discretion not to interrupt jury deliberations, *United States v. Bayer*, 331 U.S. 532, 538–39, 67 S.Ct. 1394, 1397–98, 91 L.Ed. 1654 (1947). Defense counsel did not request that completion of the evidence be deferred until the photographs could be obtained.

## II. The Sentence

Sentences were imposed with respect to the 12 counts on which Golomb was found guilty as follows: Count 1, the overall conspiracy, 4 years and a fine of $10,000; Counts 2 and 3, receipt of stolen Treasury checks, 2 years on each count; Count 4, receipt of burglary proceeds, 5 years; Counts 5 and 6, mail fraud, 2 years on each count; Counts 7–11, transportation of stolen checks, 2 years on each count; Count 12, use of stolen credit card, 1 year. The 2-year sentences on Counts 5 and 6 run concurrently with each other. All of the other sentences, including the 2 years imposed for both Counts 5 and 6, run consecutively. Thus, 11 sentences have been imposed consecutively for a total term of 26 years. In addition, Golomb was fined $10,-000 and ordered to pay restitution of approximately $102,000.

Golomb contends that the total prison term of 26 years, imposed on a defendant with no prior convictions, is so disproportionate to the property offenses for which he was convicted as to violate the proportionality component of the Eighth Amendment's prohibition on cruel and unusual punishments. *See Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *United States v. Ortiz,* 742 F.2d 712 (2d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 573, 83 L.Ed.2d 513 (1984). The Government responds that none of the separate sentences can possibly be considered to be cruel and unusual and that the severity of the cumulative sentence simply reflects the fact that Golomb has committed numerous crimes.

Nearly 100 years ago the Supreme Court of Vermont expressed the view that neither the state nor the federal prohibition on cruel and unusual punishment would be violated by the imposition of consecutive sentences for a series of burglaries even if the consequence was to imprison a defendant for life. *O'Neil v. State,* 58 Vt. 140 (1885). That observation was made in the course of upholding a fine of $6,140, plus costs of $498, for a series of 307 bootlegging offenses; it was a condition of the sentence that upon the defendant's failure to pay the fine, he would be imprisoned at hard labor for three days for each dollar of

the fine—a total of 19,914 days or 54½ years. Upon review by the United States Supreme Court, the Court stated that it would "forbear consideration of [the] question" whether cumulation of sentences would raise an issue under the federal Constitution because the federal claim had not been assigned as error and the Eighth Amendment had not then been held applicable to the States. *O'Neil v. Vermont,* 144 U.S. 323, 331–32, 12 S.Ct. 693, 696–97, 36 L.Ed. 450 (1892).

Since that time federal courts have sustained against Eighth Amendment challenges severe prison terms resulting from the imposition of consecutive sentences. *United States ex rel. Darrah v. Brierley,* 415 F.2d 9, 13 (3d Cir.1969) (five consecutive 10- to 20-year sentences for five burglary convictions); *Anthony v. United States,* 331 F.2d 687, 693–94 (9th Cir.1964) (two consecutive 20-year sentences imposed on a first offender for marijuana sales); *Smith v. United States,* 273 F.2d 462, 467–68 (10th Cir.1959) (in banc) (five consecutive sentences aggregating 52 years imposed on first offender for offenses resulting from three sales and two possessions of narcotics), *cert. denied,* 363 U.S. 846, 80 S.Ct. 1619, 4 L.Ed.2d 1729 (1960). As recently as 1978, this Court noted that the Supreme Court had never found a sentence violative of the Eighth Amendment because of its length, *Carmona v. Ward,* 576 F.2d 405, 408 (2d Cir.1978), *cert. denied,* 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 58 (1979), and the subsequent invalidation of a life sentence without possibility of parole, imposed under a recidivist statute for uttering a "no account" check for $100, did not involve consecutive sentences, *Solem v. Helm, supra.* Plainly it would take an extraordinary set of circumstances to demonstrate that the cumulation of valid sentences for distinct offenses constitutes cruel and unusual punishment, although, as the Supreme Court noted in *Helm,* "no penalty is *per se* constitutional." 103 S.Ct. at 3009–10.

■ Preliminary to any ultimate ruling on Golomb's constitutional challenges, how- ever, we confront the issue of whether the District Judge has satisfied procedural requirements appropriate for the imposition of what is unquestionably a severe sentence. Normally there is no constitutional requirement that a sentencing judge provide an explanation for a sentence, *see Williams v. Oklahoma,* 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), though in unusual circumstances an explanation has been required, *North Carolina v. Pearce,* 395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656 (1969) (explanation required for imposition of more severe sentence after successful appeal and retrial).

Though furnishing reasons for a criminal sentence is a recommended practice, *see, e.g.,* ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Sentencing Alternatives and Procedures* § 5.6 (Approved Draft 1968), we have stated that a federal trial judge is "ordinarily 'under no obligation to give reasons for his sentencing decisions.' " *United States v. Vasquez,* 638 F.2d 507, 534 (2d Cir.1980) (quoting *McGee v. United States,* 462 F.2d 243, 247 (2d Cir.1972)), *cert. denied,* 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981). We have, however, noted that furnishing a statement of reasons for a sentence, even if not required, is a "salutary" practice. *United States v. Seijo,* 537 F.2d 694, 699 (2d Cir.1976), *cert. denied,* 429 U.S. 1043, 97 S.Ct. 745, 50 L.Ed.2d 756 (1977); *United States v. Velazquez,* 482 F.2d 139, 142 (2d Cir.1973).

■ Congress has now determined that federal district judges will be required to state the reasons for every sentence they impose, Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473 § 211 (adding section 3553(c) to the Criminal Code). Though this provision, along with most of the other sentencing provisions of the new Act, does not become effective until November 1, 1986, *id.* § 235(a)(1), we think this expression of congressional sentiment is pertinent guidance for us, even prior to the formal effective date, in determining

whether in this particular case the sentence was adequately explained. As we have noted the sentence is an aggregation of 11 sentences imposed consecutively. The defendant has no prior convictions. Though we recognize that the evidence in this case reveals him to have engaged in a continuing course of criminal conduct, there remains a difference, implicitly recognized by recidivist statutes, between a person who has repeatedly committed crimes after a series of convictions and a person like Golomb whose repeated crimes bring him before a sentencing judge for the first time. *Cf. Solem v. Helm, supra,* 103 S.Ct. at 3023 (Burger, C.J., dissenting) ("Surely seven felony convictions warrant the conclusion that respondent is incorrigible."). The offenses are all crimes of property, though Golomb's encouragement of others to commit burglaries created a substantial risk that those entering what they thought were unoccupied homes would in fact terrorize the occupants. Finally, we note that the aggregate term is 26 years. Under all the circumstances, we believe this is that rare case where even under existing law a statement of reasons is required.

With respect to the separate sentences for each offense, the District Judge endeavored to set forth the considerations that prompted the various sentences she selected. In particular, she noted how "reprehensible" were the burglaries that the defendant encouraged—crimes in which private homes were invaded and irreplaceable family heirlooms of gold jewelry were taken and melted into gold bars. She also noted the reprehensible nature of the stolen check crimes, which had victimized the Mariners' Family Home on Staten Island. Having selected with some explanation appropriate sentences for each offense, however, the District Judge then ruled without any explanation that 11 of the sentences would run consecutively. Consecutiveness applied even to two counts involving stolen Treasury checks that had been sold to the defendant by undercover federal agents. Though the agents' role in these offenses provides no defense to the conviction, it does raise a question whether repeated sales by government agents ought to provide the basis for two consecutive sentences, which are then cumulated with nine other consecutive sentences.

We do not suggest that, in advance of the effective date of the sentencing provisions of the new Act, sentencing judges are required routinely to give reasons for their sentences or even obliged to do so in every case involving consecutive sentences. However, the unusual circumstances of this case prompt us to vacate the sentence and return the case to the District Judge for reconsideration of the extent to which the sentences should run consecutively and to provide an adequate explanation for the decision reached upon such reconsideration.

The conviction is affirmed; the sentence is vacated and remanded for further proceedings.