PD-1548-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/30/2015 9:34:12 AM
Accepted 12/1/2015 1:15:29 PM
ABEL ACOSTA
CLERK

NO. _____

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

# JAMES REID

## v.

# THE STATE OF TEXAS

---

From the Waco Court of Appeals
Cause No. 10-14-00107-CR

## APPELLANT JAMES REID'S
## PETITION FOR DISCRETIONARY REVIEW

**E. Alan Bennett**
State Bar #02140700
Counsel for Appellant

Sheehy, Lovelace & Mayfield, P.C.
510 N. Valley Mills Dr., Ste. 500
Waco, Texas 76710
Telephone: (254) 772-8022
Telecopier: (254) 772-9297
Email: abennett@slmpc.com

FILED IN
COURT OF CRIMINAL APPEALS

December 1, 2015

ABEL ACOSTA, CLERK

**ORAL ARGUMENT REQUESTED**

# Identity of Judge, Parties and Counsel

Appellant, pursuant to Rule of Appellate Procedure 68.4(a), provides the following list of the trial court judge, all parties to the trial court's judgment, and the names and addresses of all trial and appellate counsel.

**THE TRIAL COURT:**

Hon. Matt Johnson                                          Trial Court Judge
54th District Court, McLennan County
501 Washington Avenue, Suite 305
Waco, Texas 76701

**THE DEFENSE:**

James Reid                                                      Appellant

Doug Henager                                                 Trial Counsel
Scott Peterson
1701 Austin Ave.
Waco, Texas 76701

E. Alan Bennett                                           Appellate Counsel
510 North Valley Mills Drive, Suite 500
Waco, Texas  76710

**THE STATE:**

Hilary LaBorde                                    Trial Counsel
Gabrielle Massey
Assistant Criminal District Attorneys

Sterling Alan Harmon                              Appellate Counsel
Gabe Price
Assistant Criminal District Attorney

Abelino Reyna
Criminal District Attorney
McLennan County District Attorney's Office
219 North 6th Street, Suite 200
Waco, Texas  76701

# Table of Contents

Identity of Judge, Parties and Counsel ...................................................2

Table of Contents ...............................................................................4

Index of Authorities............................................................................6

Statement Regarding Oral Argument..................................................8

Statement of the Case .........................................................................8

Statement of Procedural History ........................................................9

Grounds for Review............................................................................9

Reasons for Granting Review............................................................10

Argument ........................................................................................11

    1. The Waco Court of Appeals erroneously applied a hairsplitting, hypertechnical standard when it concluded that Appellant's running objection failed to preserve error...............................................11

        A. Preservation Rules Are Not Applied in Hypertechnical Fashion. ....12
        B. Running Objections Should Not Be Overly Broad. .............................13
        C. Appellate Courts Review Running Objections in Context. ................15
        D. The Waco Court Erred by Holding That Appellant Waived Error...19
        E. The Waco Court's Decision Denied Appellant His Right to Appeal.21
        F. The Court Should Grant Review on This Issue...................................22

    2. The imposition of consecutive sentences without a statement of reasons violates the Eighth Amendment prohibition against cruel and unusual punishments.................................................................24

A. The Eighth Amendment Eschews Arbitrariness and Unpredictability. ...............................................................25
B. The Second Circuit Has Required a Statement of Reasons. ................26
C. Texas Appellate Courts Have Granted Unbridled Discretion. ..........27
D. Trial Courts Should Be Required to Give Reasons. .............................28
E. *Johnson* did not address the Eighth Amendment.................................28
F. The Court Should Grant Review. ..........................................................30

Prayer ...............................................................................................................31

Certificate of Compliance ..............................................................................32

Certificate of Service ......................................................................................32

Appendix...........................................................................................................33

# Index of Authorities

## Federal Cases

*California v. Brown*, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987)25,    26, 27, 28

*Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (plurality opinion)................................................................................................ 25, 28

*Penry v. Texas*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) ....... 25, 28

*United States v. Golomb*, 754 F.2d 86 (2d Cir. 1985) ................................... 26, 27

*Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) ..............................................................................................................26

## Texas Cases

*Baird v. State*, 455 S.W.2d 259 (Tex. Crim. App. 1970).....................................29

*Barrow v. State*, 207 S.W.3d 377 (Tex. Crim. App. 2006) .................................27

*Beedy v. State*, 250 S.W.3d 107 (Tex. Crim. App. 2008)....................................27

*Ethington v. State*, 819 S.W.2d 854 (Tex. Crim. App. 1991).............................14

*Ford v. State*, 112 S.W.3d 788 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ................................................................................................ 16, 17, 21

*Ford v. State*, 919 S.W.2d 107 (Tex. Crim. App. 1996).....................................14

*George v. State*, 959 S.W.2d 378 (Tex. App.—Beaumont 1998, pet. ref'd)18, 21

*Goodman v. State*, 701 S.W.2d 850 (Tex. Crim. App. 1985)..............................14

*Johnson v. State*, 492 S.W.2d 505 (Tex. Crim. App. 1973) ...............................29

*Lankston v. State*, 827 S.W.2d 907 (Tex. Crim. App. 1992) ..............................12

*Martinez v. State*, 98 S.W.3d 189 (Tex. Crim. App. 2003) ..................................14

*Nicholas v. State*, 56 S.W.3d 760 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) ...................................................................................................28

*Reid v. State*, No. 10-14-00107-CR, 2015 WL 6584361 (Tex. App.—Waco Oct. 29, 2015, pet. filed) ...................................................................20

*Rivas v. State*, 275 S.W.3d 880 (Tex. Crim. App. 2009) ...................................13

*Sattiewhite v. State*, 786 S.W.2d 271 (Tex. Crim. App. 1989) ............... 14, 15, 21

*Thomas v. State*, 408 S.W.3d 877 (Tex. Crim. App. 2013)........................... 13, 15

*Walker v. State*, 406 S.W.3d 590 (Tex. App.—Eastland 2013, pet. ref'd) ............ ................................................................................................. 14, 16, 21

## Federal Constitution

U.S. CONST. amend. VIII.................................................................................25

## Texas Statutes

TEX. CODE CRIM. PROC. art. 42.08(a) ...............................................................29

## Rules

TEX. R. APP. P. 66.3 ......................................................................... 10, 22, 23, 30

## Statement Regarding Oral Argument

Oral argument will aid the decisional process. By granting oral argument, counsel may answer questions posed by the judges regarding the intersection between this Court's stated preference for avoidance of hypertechnical application of preservation rules and the principles governing running objections. In addition, oral argument will allow for a full presentation and thoughtful discussion regarding the extent to which the Eighth Amendment impacts a trial court's decision to impose consecutive sentences. For these reasons and to address any other issues, Appellant respectfully requests the opportunity to appear and present oral argument.

## Statement of the Case

A jury convicted Appellant of three counts of indecency with a child. The jury assessed his punishment at 16 years' imprisonment on each count. The trial court sentenced Appellant in accordance with the verdict and ordered the sentences to run consecutively.

## Statement of Procedural History

The Waco Court of Appeals affirmed Appellant's conviction in a unanimous opinion authored by Justice Davis that was handed down October 29, 2015. No motion for rehearing was filed.

## Grounds for Review

1.   The Waco Court of Appeals erroneously applied a hairsplitting, hypertechnical standard when it concluded that Appellant's running objection failed to preserve error.

2.   The imposition of consecutive sentences without a statement of reasons violates the Eighth Amendment prohibition against cruel and unusual punishments.

## Reasons for Granting Review

The Court should grant discretionary review in this appeal because the Waco Court of Appeals: (1) has issued a decision that conflicts with the decisions of other intermediate appellate courts; (2) has decided an important question of state and federal law that has not been, but should be, settled by this Court; (3) has decided important questions of state and federal law in a way that conflicts with the applicable decisions of this Court and of the Supreme Court of the United States; (4) has misconstrued Rule of Appellate Procedure 33.1(a)(1) and Rule of Evidence 103(a)(1); and (5) has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Court's power of supervision. TEX. R. APP. P. 66.3.

# Argument

1. **The Waco Court of Appeals erroneously applied a hairsplitting, hypertechnical standard when it concluded that Appellant's running objection failed to preserve error.**

Appellant contested the admissibility of his prior convictions from New York for sexual abuse during the guilt-innocence phase. The issue originally arose via the State's motion in limine that the trial court initially granted. Then, when the State convinced the trial court that Appellant had opened the door to the admissibility of the prior convictions, the trial court overruled Appellant's objection but granted a "running objection on this issue." The witness who was testifying at that moment and three others testified about his prior convictions. Appellant presented a complaint on appeal regarding these witnesses testifying about the prior convictions. However, the Waco Court of Appeals held that the running objection failed to adequately preserve the complaint. The Waco Court erred by doing so because Appellant's running objection was sufficiently narrow and sufficiently specific to preserve error.

## A. Preservation Rules Are Not Applied in Hypertechnical Fashion.

For over twenty years, this Court has emphasized that the rules for preservation of error should be applied in a common-sense fashion and preservation should not depend on a hypertechnical application of these rules. This has represented a shift of emphasis from past decisions that elevated form over substance.

> To be sure, there are reported cases which seem to take a more slavish and unforgiving approach, but these have dwindled in importance as they have in frequency. Contemporary examples are now few and far between, and it is our purpose that they become even less common in the future.
>
> . . . .
>
> The standards of procedural default, therefore, are not to be implemented by splitting hairs in the appellate courts. As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.

*Lankston v. State*, 827 S.W.2d 907, 908-09 (Tex. Crim. App. 1992).

The Court has continued to embrace this approach to preservation of error.

> We have extended this concept even so far as to hold that a party need not state his objection with specificity in order to preserve error so long as the record otherwise makes it clear

that both the trial court and the opposing party understood the legal basis. After all, the reason that any objection must be specific in the first place is so that the trial court can avoid the error or provide a timely and appropriate remedy, and the opposing party has an opportunity to respond and, if necessary, react. So long as it appears from an appellate record that these policies have been satisfied, it should not matter to the appellate court whether the objecting party used a particular "form of words"—or any particular words at all, if meaning is adequately conveyed by context.

*Thomas v. State*, 408 S.W.3d 877, 884-85 (Tex. Crim. App. 2013); *see also Rivas v. State*, 275 S.W.3d 880, 881-82 (Tex. Crim. App. 2009).

The Waco Court wholly failed to follow these principles when it concluded that Appellant's running objection failed to preserve his complaint.

## B. Running Objections Should Not Be Overly Broad.

Rule of Appellate Procedure 33.1(a)(1) and Rule of Evidence 103(a)(1) provide the general rules for preservation of error, namely, a specific and timely objection should be asserted each time the complained-of line of testimony is offered.

However, such a complaint may also be preserved by: (1) a specific running objection; or (2) a ruling outside the jury's presence. *Martinez v.*

*State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Walker v. State*, 406 S.W.3d 590, 599 (Tex. App.—Eastland 2013, pet. ref'd).

This Court has observed that on some occasions a running objection "is not only adequate to preserve error, but actually desirable." *Ethington v. State*, 819 S.W.2d 854, 858–59 (Tex. Crim. App. 1991). However, a running objection is impermissibly overbroad when it complains generally of a matter referred to by any witness at any time during the trial. *Goodman v. State*, 701 S.W.2d 850, 863 (Tex. Crim. App. 1985). Thus, "an advocate who lodges a running objection should take pains to make sure it does not encompass too broad a reach of subject matter over too broad a time or over different witnesses." *Sattiewhite v. State*, 786 S.W.2d 271, 284 n.4 (Tex. Crim. App. 1989).

Nevertheless, "as long as the running objection constituted a timely objection, stating the specific grounds for the ruling, the movement desired the court to make . . . [,] then the error should be deemed preserved by an appellate court." *Ford v. State*, 919 S.W.2d 107, 113 (Tex. Crim. App. 1996) (quoting *Sattiewhite*, 786 S.W.2d at 284-85 n.4).

Returning to the *Sattiewhite* discussion of impermissibly overbroad running objections, the Court in that decision enunciated a two-part

standard for evaluating whether a running objection is too broad. The phrasing indicates that both must be present for the objection to be impermissibly overbroad. First, an impermissibly overbroad running objection addresses "too broad a reach of subject matter." *Sattiewhite*, 786 S.W.2d at 284 n.4. And second, a running objection that addresses a broad subject matter is impermissibly overbroad if the objection runs "over too broad a time or over different witnesses." *Id.*

Here, Appellant's running objection addressed the narrow issue of the admissibility of his prior convictions. (4 RR 55-58) The trial court granted "a running objection on this issue." (4 RR 58)

Therefore, Appellant's objection did not run afoul of the first part of the *Sattiewhite* test. For this reason, the Waco Court should not have reached the second part of the *Sattiewhite* test regarding the objection extending to multiple witnesses.

## C. Appellate Courts Review Running Objections in Context.

As this Court recently held, the context of the objection is important in determining whether error has been preserved. *Thomas*, 408 S.W.3d at 885.

Appellant has located three cases in which Texas appellate courts have concluded, consistent with *Thomas*, that a running objection was sufficient to preserve error when viewed in context.

In *Walker*, defense counsel secured a running objection before the first of two witnesses testified about the subject at issue. The Eastland Court found in context that the objection was sufficient to preserve error with regard to that issue as to both witnesses.

> We note that the trial court permitted defense counsel to enter a running objection prior to Officer Luckie's testimony during the punishment phase to the "line of new questioning . . . based on . . . charges [ ] not pursued in Hood County." The running objection **contextually** covers the testimony of Officers Luckie and Miller, based on the charges not pursued in Hood County.

*Walker*, 406 S.W.3d at 599 (emphasis added).

In *Ford*, the Fourteenth Court addressed a situation in which the defense sought to exclude evidence of the defendant's prior conviction during the guilt-innocence phase. The defense raised this complaint by pretrial motion in limine. The trial court denied the motion in limine but granted a running objection to the introduction of that evidence. *Ford v. State*, 112 S.W.3d 788, 791 (Tex. App.—Houston [14th Dist.] 2003, no pet.). The State argued that the defendant failed to preserve his complaint

because he did not re-urge the objection when the State offered evidence that he had stipulated to the prior conviction. *Id.*

The Fourteenth Court rejected the State's waiver argument after reviewing the context in which the running objection was granted.

> [I]n this case trial counsel specifically requested a running objection to the introduction of evidence addressed in the motion in limine and the trial court granted counsel's request. Because the trial court granted appellant's running objection to the admission of evidence that he now complains of on appeal, we find the State's contention that error was waived to be without merit.

*Id.*

The Beaumont Court took a similar approach in *George*. In that case, the defense objected to the introduction of evidence regarding prior rib fractures. The defense first raised the issue in a pretrial motion in limine. The defense objected when medical records were introduced that included evidence of the prior fractures. When one physician testified, Dr. Sanders, the trial court granted a running objection on this issue. Then when a second physician testified, Dr. Luquette, the defense against requested and was granted a running objection on this issue. However, defense counsel failed to object when the State questioned Dr. Luquette on redirect examination regarding the prior rib fractures. Thus, the State urged on

appeal that the defense had waived the complaint. *George v. State*, 959 S.W.2d 378, 383-84 (Tex. App.—Beaumont 1998, pet. ref'd).

Like the Fourteenth Court, the Beaumont Court rejected this waiver argument after reviewing the context in which the complaint was raised.

> After reviewing the statements by counsel and the court pertaining to the prior injury evidence, it is clear that the trial judge and the State were notified of the complaint. We conclude the combination of Defense Counsel's efforts, including the pre-trial motion, numerous objections at trial to the prior injury evidence, along with the requests for running objections was amply sufficient to preserve error.

*Id.* at 384.

The Waco Court, in hypertechnical, hair-splitting fashion, failed to view in context Appellant's numerous objections, the State's own acknowledgement by motion in limine that the evidence was inadmissible, and the hearing outside the jury's presence immediately before granting a running objection. When counsel's efforts are viewed in context, the trial court and the State had more than sufficient notice of the basis for the

complaint.[1] Thus, the Waco Court erred by holding that Appellant failed to preserve his complaint.

## D. The Waco Court Erred by Holding That Appellant Waived Error.

From the beginning, the parties and the trial court understood that the prior convictions were not admissible during the guilt-innocence phase. The State raised this issue by motion in limine and asked the trial court to prohibit Appellant from introducing evidence regarding the details of the prior conviction. (CR 35-37) Following a discussion on the record, the trial court granted that motion. (CR 38), (3 RR 6-9)

The issue was again revisited in a hearing outside the presence of the jury when the State argued that Appellant had opened the door to evidence of the prior convictions during his examination of a witness for the defense. The trial court agreed with the State. The trial court's ruling reflects that the trial court and the parties had considered this evidence inadmissible up to that point. (4 RR 55-56)

When the State asked this witness about the prior convictions before the jury, Appellant re-urged his objections that this was inadmissible

---

[1]     And from the context of the appellate record, it seems apparent that the State's attorney believed the issue was adequately preserved because the State did not contend otherwise in its brief before the Waco Court.

extraneous-offense evidence under Rule 404(b) and likewise inadmissible under Rule 403. The trial court overruled the objection. (4 RR 57)

Next, the State inquired into the details of the prior convictions. At that point, Appellant re-urged his prior objections and requested "a running objection on this issue." The trial court overruled the objection but granted a running objection. (4 RR 58)

The State cross-examined three other defense witnesses about the prior convictions, but Appellant (convinced that his "running objection on this issue" preserved error with regard to these subsequent witnesses) did not re-urge the running objection when the State questioned these witnesses on this issue.

The Waco Court of Appeals concluded that Appellant failed to preserve his complaint because he failed to re-urge the running objection when these subsequent witnesses were questioned on this issue. *See Reid v. State*, No. 10-14-00107-CR, 2015 WL 6584361, at *3-4 (Tex. App.—Waco Oct. 29, 2015, pet. filed). Appellant argues that the Waco Court employed the hypertechnical hairsplitting approach to preservation of error condemned by this Court in *Thomas*, *Rivas* and *Lankston*, among other decisions.

Rather, when the running objection granted by the trial court is evaluated in the context of the trial proceedings, this Court must conclude that the issue was properly preserved. *See Walker*, 406 S.W.3d at 599; *Ford*, 112 S.W.3d at 791; *George*, 959 S.W.2d at 384. Clearly, the trial court and the State understood the basis of Appellant's complaint. In fact, the State's brief on appeal reflected the State's belief that the issue was properly preserved. The objection was narrowly focused on the issue of admissibility of the prior convictions. *Cf. Sattiewhite*, 786 S.W.2d at 284 n.4 (running objection must "not encompass too broad a reach of subject matter"). For these reasons, the Waco Court erred by concluding that Appellant failed to preserve his complaint for appellate review.

**E. The Waco Court's Decision Denied Appellant His Right to Appeal.**

Appellant's first and second issues in the Waco Court related to the improperly-admitted evidence of his prior convictions. The first issue directly challenged the admissibility of this evidence. The second related to inadmissible backdoor hearsay regarding Appellants' alleged "high risk to re-offend." The Waco Court's disposition of the first issue on preservation grounds impacted its disposition of the second.

Thus, the Waco Court held that the admission of testimony regarding the prior convictions rendered harmless any error arising from the admission of the inadmissible hearsay evidence challenged in Appellant's second issue.

For these reasons, Appellant asks the Court to grant review on the preservation issue and, upon finding that the complaint was properly preserved, remand this case to the Waco Court to reconsider Appellant's first and second issues.

## F. The Court Should Grant Review on This Issue

The Court should grant review of this issue for many of the reasons listed in Rule 66.3. *See* TEX. R. APP. P. 66.3.

The Waco Court's decision conflicts with the decisions of at least three other intermediate appellate courts, namely *Walker*, *Ford* and *George*. *Id.* 66.3(a).

The Waco Court's decision conflicts with the applicable decisions of this Court, namely *Thomas*, *Rivas* and *Lankston*. *Id.* 66.3(c).

The Waco Court appears to have misconstrued Rule of Appellate Procedure 33.1(a)(1) and Rule of Evidence 103(a)(1). *Id.* 66.3(d).

And with all due respect, the Waco Court's narrow ruling on preservation of error represents so far a departure from the accepted and usual course of judicial proceedings as to call for an exercise of this Court's power of supervision. *Id.* 66.3(f).

For all these reasons, this Court should grant this ground for discretionary review.

**2.** **The imposition of consecutive sentences without a statement of reasons violates the Eighth Amendment prohibition against cruel and unusual punishments.**

In *Johnson*, this Court summarily rejected a general due process challenge to the constitutionality of article 42.08 of the Code of Criminal Procedure, which authorizes the imposition of consecutive sentences without any guiding rules or principles. This Court has not addressed an Eighth Amendment challenge to subsection (a) of this statute. Since *Johnson*, the Supreme Court of the United States has promulgated extensive Eighth Amendment jurisprudence. Applying this jurisprudence, Appellant contends that the Eighth Amendment requires a trial court to provide a statement of reasons for the imposition of consecutive sentences under article 42.08(a). Here, the trial court's imposition of consecutive sentences without such an explanation violates the Eighth Amendment prohibition against cruel and unusual punishments.

## A. The Eighth Amendment Eschews Arbitrariness and Unpredictability.

The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted*." U.S. CONST. amend. VIII (emphasis added).

The Supreme Court has explained that a death penalty sentencing scheme violates the Eighth Amendment prohibition against cruel and unusual punishment if that scheme lacks guiding principles "to prevent the penalty from being administered in an arbitrary and unpredictable fashion." *See California v. Brown*, 479 U.S. 538, 541, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987). To prevent the imposition of a death sentence in "an arbitrary and unpredictable fashion," the sentencer's discretion must be "controlled by clear and objective standards so as to produce nondiscriminatory application." *Gregg v. Georgia*, 428 U.S. 153, 198, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (plurality opinion); *see Penry v. Texas*, 492 U.S. 302, 327, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (the constitution requires "carefully defined standards that must narrow a sentencer's discretion to impose the death sentence"). This "also ensures the availability of meaningful judicial

review, another safeguard that improves the reliability of the sentencing process." *Brown*, 479 U.S. at 543.

The Supreme Court treats death penalty cases differently than non-capital cases because "the penalty of death is qualitatively different from a sentence of imprisonment, however long." *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). Admittedly, consecutively-imposed sentences are not on the same level as death sentences. However, they are qualitatively different from jury-assessed sentences because cumulation orders significantly increase sentences that jurors choose to assess.

## B. The Second Circuit Has Required a Statement of Reasons.

The Second Circuit has held that under certain circumstances a federal district judge should be required to explain his reasons for imposing consecutive sentences. *United States v. Golomb*, 754 F.2d 86, 90 (2d Cir. 1985). Golomb was a first-offender whose aggregate term of years on eleven counts amounted to twenty-six years. *Id.* at 90-91. The maximum sentence imposed was five years on a charge of receipt of burglary proceeds. *Id.* at 89. The Second Circuit held that the circumstances of his

case required a statement of reasons from the trial judge to justify the consecutive sentences. *Id.* at 91.

Appellant contends that in a case such as this, just as in *Golomb*, a statement of reasons should be required from the trial court to justify the imposition of consecutive sentences to "ensure[ ] the availability of meaningful judicial review." *Brown*, 479 U.S. at 543.

## C. Texas Appellate Courts Have Granted Unbridled Discretion.

Notwithstanding the concerns expressed in *Brown* and similar cases, Texas appellate courts have invested trial courts with absolute discretion in the arena of consecutive sentences. Appellant insists that this is inconsistent with the requirements of the Eighth Amendment.

This Court has repeatedly held that a trial court's decision to cumulate sentences is "a normative, discretionary function" that does not depend on any particular findings or standards. *Beedy v. State*, 250 S.W.3d 107, 110 (Tex. Crim. App. 2008); *Barrow v. State*, 207 S.W.3d 377, 380 (Tex. Crim. App. 2006). The decision to cumulate sentences, where authorized by law, has been characterized as virtually "unassailable." *Beedy*, 250 S.W.3d at 110. The Fourteenth Court of Appeals has described the trial court's

discretion as "absolute." *Nicholas v. State*, 56 S.W.3d 760, 765 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

This unbridled discretion is inconsistent with the requirements of the Eighth Amendment.

## D. Trial Courts Should Be Required to Give Reasons.

The approach endorsed by Texas appellate courts for consecutive sentences violates the Eighth Amendment prohibition against cruel and unusual punishments because: (1) it allows the cumulation decision to be made in an arbitrary and unpredictable fashion; *cf. Brown*, 479 U.S. at 541; (2) it fails to provide "clear and objective standards so as to produce nondiscriminatory application" of the cumulation decision; *cf. Gregg*, 428 U.S. at 198; (3) it fails to provide "carefully defined standards that must narrow a sentencer's discretion" in imposing consecutive sentences; *cf. Penry*, 492 U.S. at 327; and (4) it denies a criminal defendant's right to "meaningful judicial review" of the cumulation decision. *Cf. Brown*, 479 U.S. at 543.

## E. *Johnson* **did not address the Eighth Amendment.**

In *Johnson*, this Court summarily addressed the constitutionality of article 42.08 in 1973. The Court explicitly rejected a contention grounded in

due process that article 42.08[2] "could be constitutional only if certain standards are set forth to guide the court in the exercise of its discretion." *Johnson v. State*, 492 S.W.2d 505, 506 (Tex. Crim. App. 1973). However, *Johnson* was decided before the Supreme Court developed its Eighth Amendment jurisprudence cited above. More importantly, this Court has never addressed an Eighth Amendment challenge to article 42.08(a).[3] Therefore, Appellant asks the Court to reconsider *Johnson* in view of the Supreme Court's subsequent Eighth Amendment jurisprudence.

---

[2]  Article 42.08(a) (which is the focus of Appellant's challenge) provides in relevant part:

> (a) When the same defendant has been convicted in two or more cases, judgment and sentence shall be pronounced in each case in the same manner as if there had been but one conviction. Except as provided by Sections (b) and (c) of this article, in the discretion of the court, the judgment in the second and subsequent convictions may either be that the sentence imposed or suspended shall begin when the judgment and the sentence imposed or suspended in the preceding conviction has ceased to operate, or that the sentence imposed or suspended shall run concurrently with the other case or cases, and sentence and execution shall be accordingly.

TEX. CODE CRIM. PROC. art. 42.08(a).

[3]  The Court did address many years ago an Eighth Amendment challenge to the part of article 42.08 that is now codified as article 42.08(b), which requires the imposition of consecutive sentences when a person commits an offense while serving a prison sentence for a different offense. *See Baird v. State*, 455 S.W.2d 259, 259 (Tex. Crim. App. 1970).

**F. The Court Should Grant Review.**

The Court should grant review of this issue for two of the reasons listed in Rule 66.3. *See* TEX. R. APP. P. 66.3.

The issue of whether the Eighth Amendment requires a trial court to provide reasons for imposing consecutive sentences constitutes an important question of state or federal law that has not been, but should be, settled by this Court. *Id.* 66.3(b).

The Waco Court's decision appears to conflict with the applicable Eighth Amendment decisions of the Supreme Court of the United States. *Id.* 66.3(c).

For both reasons, this Court should grant this ground for discretionary review.

# Prayer

WHEREFORE, PREMISES CONSIDERED, Appellant James Reid asks the Court to: (1) grant review on the issues presented in this petition for discretionary review; and (2) grant such other and further relief to which he may show himself justly entitled.

Respectfully submitted,

_/s/ Alan Bennett_
E. Alan Bennett
SBOT #02140700
Counsel for Appellant

Sheehy, Lovelace & Mayfield, P.C.
510 N. Valley Mills Dr., Ste. 500
Waco, Texas  76710
Telephone:       (254) 772-8022
Fax:        (254) 772-9297
Email:       abennett@slmpc.com

## Certificate of Compliance

The undersigned hereby certifies, pursuant to Rule of Appellate Procedure 9.4(i)(3), that this computer-generated document contains 3,897 words, excluding those parts excluded by Rule 9.4(i)(1).

 */s/ Alan Bennett*
E. Alan Bennett

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of this petition was served electronically on November 30, 2015 to: (1) counsel for the State, Sterling Harmon, sterling.harmon@co.mclennan.tx.us; and (2) the State Prosecuting Attorney, lisa.mcminn@SPA.texas.gov.

 */s/ Alan Bennett*
E. Alan Bennett

# Appendix

Opinion of Waco Court of Appeals:

> *Reid v. State*, No. 10-14-00107-CR, 2015 WL 6584361 (Tex. App.—Waco Oct. 29, 2015, pet. filed)



# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-14-00107-CR

**JAMES REID,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

_____

**From the 54th District Court**
**McLennan County, Texas**
**Trial Court No. 2012-672-C2**

_____

## MEMORANDUM  OPINION

_____

A jury convicted Appellant James Reid of three counts of indecency with a child by contact.  The child, S.M., was the daughter of Reid's girlfriend when the offenses allegedly occurred.  By the time of trial, Reid and S.M.'s mother had married.  The jury assessed Reid's punishment at sixteen years' imprisonment and a $5,000 fine for each count. The trial court ordered the sentences to run consecutively.  This appeal ensued.

## Prior Convictions During Guilt-Innocence Phase

In his first issue, Reid contends that the trial court abused its discretion by admitting evidence of his prior convictions during the guilt-innocence phase.

During the defense's case-in-chief, Vennitta Swinnie testified that she had been Reid's next-door neighbor for twelve years. Over the years, she had gotten to know Reid and his family members, and her son became like "family" to the children living with Reid. The children would come to her house to visit after school, and she and her son would go to Reid's house to visit on a regular basis, "[e]very day basically." Swinnie stated that S.M. seemed to have a normal relationship with both her mother and Reid. Reid and S.M.'s mother also have a daughter together, and Swinnie said that she seemed to have a normal relationship with her parents. Swinnie did not observe any problems.

Swinnie testified that in 2010 Reid and S.M.'s mother informed her of their wedding plans. She stated that she talked to S.M. about the plans. The State objected, however, when Reid's counsel sought to question Swinnie about whether she had heard any arguing between S.M. and someone else about the wedding and about whether S.M. had made any threats about bringing these charges. The trial court held a conference in chambers. During the conference, the State argued:

> Your Honor, just for expediency sake, I think that this witness has opened the door to the prior. She's saying she has a close relationship with him. She never saw anything wrong. She thought these people were family. I think we should be allowed to ask her, well, did he tell you he's a sex offender? He's a convicted sex offender. You were letting your kid go over there. And this is opinion testimony that he - - she's close with him, that her kid goes over there, they're like family, they talked about her wedding. I think that opens the door to his prior and whether or not she knew about it, to test her opinion of him.

Your Honor, also, the defense, in opening, said there's no opportunity. There's no opportunity for this offense because, um, there's always people there, they visitation [*sic*] all the time, I think is the word the defense is using. I think that opens the door to the prior where he's having - - he's raping women with other people in the house, you know, when other people are asleep. So, I think it goes to opportunity, too. I mean, she's saying she's close with him. I think we should be able to say, well, did he tell you he has a prior? He's a registered sex offender, Your Honor. He's registering at the address she lived next door to. And now she's coming here acting like he's - - you know, he's a great dad.

The trial court stated, "I will lift the Order in Limine with regard to the prior conviction."

The State then began its cross-examination of Swinnie, during which the State asked her if she was aware that Reid was a convicted sex offender before this case. Reid objected: "Your Honor, at this time, the State [*sic*] would object under Rule 404(b). This is extraneous offense evidence that should not be - - the defendant objects - - defendant objects under 404(b) and, uh, under 403, the balancing test. The probative value does not outweigh the prejudicial effect." The trial court overruled the objection. Swinnie replied that she did not know that Reid was a convicted sex offender at the time but that she found out about it years later. Nevertheless, she did not think her son was at risk. The State then asked Swinnie what she knew about Reid's "prior"? Reid again objected: "Your Honor, we would re-urge the objection and ask for a running objection on this issue." The trial court overruled the objection but stated, "I will allow a running objection." Swinnie replied that she did not know anything about Reid's prior, but she then reiterated that it did not change her opinion as to whether her son was safe.

After Swinnie testified, S.M.'s brother, J.M., testified on cross-examination that he was aware that Reid was a registered sex offender but that he did not know very much

about the prior case and that Reid had never talked to him about it. The State specifically questioned J.M. in part as follows:

> Q     So, were you aware that there was a houseful of people when he did those offenses?
>
> A     No, ma'am. …
>
> Q     Were you aware that there was [*sic*] multiple victims in the old case?
>
> A     No, ma'am, I was not.
>
> ….
>
> Q     Um, were you aware that it had to do with defenseless drunk women that were passed out?
>
> A     No, ma'am, I didn't.

Reid did not object to this testimony by J.M.

Reid also did not object when the State then questioned his son Michael extensively about the prior conviction. Only after Michael's testimony and a short recess did Reid's counsel state, "Your Honor, the defense moves for a mistrial at this time based on the highly prejudicial effect of the - -" At that point, the trial court denied the request.

After an intervening witness, S.M.'s mother then also testified extensively about Reid's prior conviction during cross-examination by the State. The State questioned S.M.'s mother in part as follows:

> Q     Okay. What did the defendant tell you that he did?
>
> A     He told me - - well, he didn't tell me, Ms. Finkinbinder put a flyer in my car seat when I was going through my divorce and letting me know what he had done.

Q Okay.  So, have you talked to the defendant about his prior offense - -

A Yes, I have.

Q - - when he was 28 years old?  And what did he say?

A He said that he was set up with two older girls about - -  you know, he got drunk and they set him up on it.

Q Okay.  So now he was set up?

A Yes.

Q You're aware he had a jury trial?

A I was not there.  I didn't know him at the time.

Q Have you talked about the offense with your husband?

A Yes.

Q The person you let around your children unsupervised?

A Yes.

Q And what did he tell you about the offense?

A He told me what had happened.  He told me that he was set up with two girls that did it.  And I talked to his probation officer from, uh, New York.

Q Okay.  And - -  so you talked to his probation officer in New York; is that correct?

A Yes, because I had CPS called on me.  And they come down there and questioned my kids about him living there.  And [S.M.] was one of them there, too, when they questioned her about - -  about, you know, his past and stuff.  And she knew the past.

Q And you were told at that point he was at a high risk to re-offend because he wouldn't take responsibility?

Only then did Reid "object to the relevance and the materiality of this line of questioning and to this specific question." Reid also re-urged his 404(b) and 403 objection. The trial court overruled the objections, and the State asked S.M.'s mother several more questions about the prior conviction.

Finally, after both sides rested and closed, Reid's counsel stated that he would "like to elaborate and re-urge the Motion for Mistrial and point out that the specific reason and basis for the Motion for Mistrial is that, uh, the extraneous offense evidence was allowed." Following a brief discussion, the trial court denied the request.

First, Reid forfeited his complaint as to J.M.'s, Michael's, and the unobjected-to portion of S.M.'s mother's testimony. To preserve a complaint for appellate review, the record must show that the appellant made the complaint to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the appellant sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. TEX. R. APP. P. 33.1(a)(1)(A). Here, Reid failed to make his complaint to the trial court during J.M.'s, Michael's, and most of S.M.'s mother's testimony; therefore, Reid failed to preserve his complaint as to that testimony.

Reid was granted a running objection when the State questioned Swinnie about his prior conviction, but the running objection did not apply to the testimonies of J.M., Michael, and S.M.'s mother. *See Sattiewhite v. State*, 786 S.W.2d 271, 284 n.4 (Tex. Crim. App. 1989). Courts have allowed running objections to eliminate redundant and disruptive individual objections, promoting an orderly progression of the trial. *Id.* But

use of running objections is limited. *Id.*; *see, e.g.*, *Goodman v. State*, 701 S.W.2d 850, 863 (Tex. Crim. App. 1985), *overruled in part on other grounds by Hernandez v. State*, 757 S.W.2d 744, 751-52 n.15 (Tex. Crim. App. 1988) (holding "running objection to all questions concerning the offense, the nature of the offense, and everything related to the offense" made during State's cross-examination of one witness was not sufficient to preserve complaint with respect to different witness who testified after intervening testimony of six other witnesses); *White v. State*, 784 S.W.2d 453, 461 (Tex. App.—Tyler 1989, pet. ref'd) (allowing running objection to cover testimony of one witness but not that of five subsequent witnesses); *cf. Ford v. State*, 919 S.W.2d 107, 112-14 (Tex. Crim. App. 1996) (holding running objection as "to any and all impact evidence" and "to all witnesses" testifying to such was sufficient to preserve claim). "[A]n advocate who lodges a running objection should take pains to make sure it does not encompass too broad a reach of subject matter over too broad a time or over different witnesses." *Sattiewhite*, 786 S.W.2d at 284 n.4. Thus, Reid had the responsibility to preserve his complaint by making the proper objections at the time J.M., Michael, and S.M.'s mother took the stand or when they began to testify to the objectionable extraneous offenses. *See id.*; *see also Tunmire v. State*, Nos. 12-03-00231-CR, 12-03-00232-CR, 2004 WL 2008661, at *3 (Tex. App.—Tyler Sept. 8, 2004, pet. ref'd) (mem. op., not designated for publication). Reid failed to do so.

Likewise, Reid's motion for mistrial did not preserve his complaint as to any of the testimony about his prior conviction.[1] Under rule 33.1(a)(1), a motion for mistrial must

---

[1] Reid does not specifically complain that the trial court erred in denying his motion for mistrial.

be both timely and specific. TEX. R. APP. P. 33.1(a)(1); *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007). A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent. *Griggs*, 213 S.W.3d at 927. Here, Reid did not move for a mistrial until after both J.M. and Michael had finished testifying about Reid's prior conviction without objection, and Reid re-urged his motion for mistrial only after both sides had rested and closed; therefore, it was untimely and failed to preserve Reid's complaint.

Second, because Reid forfeited his complaint as to J.M.'s, Michael's, and most of S.M.'s mother's testimony by failing to make a proper complaint to the trial court, error (if any) in allowing the State to question Swinnie about Reid's prior conviction was cured even though Reid objected when the State questioned Swinnie about his prior conviction. "An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (quoting *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.").

An exception to this general rule occurs when the accused offers evidence in an effort "to meet, destroy, or explain" the complained-of testimony. *Leday*, 983 S.W.2d at 719. Reid argues that the exception applied here, excusing his responsibility to have made the proper objections at the time J.M., Michael, and S.M.'s mother took the stand or when they began to testify to the objectionable extraneous offenses. We disagree. The

testimony of J.M., Michael, and S.M.'s mother that Reid failed to complain about was not evidence that he offered in an effort "to meet, destroy, or explain" the testimony of Swinnie, which he did complain about. Rather, most of the testimony of J.M., Michael, and S.M.'s mother about Reid's prior conviction was brought out on cross-examination by the State and revealed Reid's prior conviction in even more damaging detail. Therefore, the exception does not apply in this case.

For the foregoing reasons, we overrule Reid's first issue.

## "Backdoor Hearsay"

In his second issue, Reid contends that the trial court abused its discretion by admitting "backdoor hearsay" regarding his alleged risk to re-offend. This issue concerns the following exchange:

> Q     [(By Prosecutor)]  And you were told at that point he was at a high risk to re-offend because he wouldn't take responsibility?
>
> [Defense Counsel]:  Your Honor, I'm going to object to the relevance and the materiality of this line of questioning and to this specific question.
>
> THE COURT:  Overruled.
>
> [Defense Counsel]:  We re-urge our 404(b) and 403 objection, Your Honor.
>
> THE COURT:  Overruled.
>
> Q     (BY [Prosecutor])  You're aware that he was determined to be a high risk to re-offend?
>
> [Defense Counsel]:  Your Honor, that's hearsay that she's incorporating into the questions.  Again, that's an improper question.
>
> THE COURT:  Overruled.

> Q    (BY [Prosecutor])  Did your husband tell you that he was determined to be a high risk to re-offend?
>
> A    [(By S.M.'s mother)]  Yes.

Even if the trial court should not have overruled Reid's objections, the admission of the alleged hearsay statement was harmless.  The admission of otherwise inadmissible hearsay is non-constitutional error, which we disregard if the error did not affect the appellant's substantial rights.  TEX. R. APP. P. 44.2(b); *Moon v. State*, 44 S.W.3d 589, 594-95 (Tex. App.—Fort Worth 2001, pet. ref'd).  A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict.  *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  The improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial.  *Lacaze v. State*, 346 S.W.3d 113, 122 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999).

As discussed above, the State questioned the defense witnesses extensively on cross-examination about Reid's prior conviction.  The State also drew comparisons between the prior conviction and the allegations in this case.  For instance, the State questioned Reid's son Michael as follows:

> Q    Did he tell you there were three women?
>
> A    Yes, ma'am.
>
> Q    Did he tell you that he raped them when they were passed out?
>
> A    No, ma'am.

Q    So he denied that?

A    No, ma'am.

Q    That's my question: Did he deny raping women when they were passed out?

A    He -- he never opposed of saying he raped anyone.

Q    But he admitted to you?

A    No, ma'am.

Q    What did he say?

A    He explained the situation on the night that it occurred of what happened. And what happened was there was jealousy from another woman because he didn't want an encounter with both of them.

Q    Okay. So he takes no responsibility for that prior; is that right?

A    Obviously, he took some type of responsibility.

Q    Uh, he was found guilty by a jury.

A    Right.

Q    He took that responsibility.

A    Well, then, I guess he didn't, ma'am.

Q    He called them "sluts." Are you aware of that?

A    No, ma'am.

Q    So he hasn't taken responsibility for that? Is that right?

A    I'm pretty sure he did. He did sentencing for it.

Q    Well, a jury made him take responsibility. He never came into court like you did and pled guilty to anything; is that correct?

A       I don't know, ma'am.

Q       And he's telling you it was about jealous women making up stuff about him; is that right?

A       Right.  Yes, ma'am.

Q       Three of them?

A       Yes, ma'am.

Q       You're aware there was no violence in those offenses?

A       Yes, ma'am.

Q       Uh, there was no threats?

A       Yes, ma'am.

Q       They're [*sic*] was no pain?

A       Yes, ma'am.

….

Q       Um, [S.M.] was not a prepubescent child.  She was not a little girl that hadn't gone through puberty.  She was a teenage girl?

A       Yes, ma'am.

Q       Her body would have been pretty similar to the bodies of the girls he raped when he was 28; is that right?

A       I don't know, ma'am.

Q       They were developed women.  They were in their early twenties and [S.M.] was a developed, young teenager; is that right?

A       She was a teenager.  Yes, ma'am.

In light of this similar evidence admitted without objection, we conclude that the admission of the alleged hearsay statement was harmless. We overrule Reid's second issue.

### Prior Convictions During Punishment Phase

In his third issue, Reid contends that the trial court abused its discretion in admitting evidence of prior convictions during the punishment phase. Specifically, Reid argues that the State failed to connect the convictions to him.

The indictment in this case contained the following enhancement allegation:

> And it is further presented in and to said Court that prior to the commission of the primary offense, on the 25th day of August A.D. 1990, in The Court of Onodago, County, New York, in Case Number 90-0974-1, the said **JAMES REID** was convicted of a felony, to-wit: Sexual Abuse and the said conviction became final prior to the commission of the primary offense[.]

During the punishment phase, the State read the enhancement allegation in open court before the jury. Reid pleaded "Not True" to the enhancement allegation. The State then offered into evidence State's Exhibit 1, described as the "Penitentiary Packet" for Indictment No.: 90-0974-1, The People of the State of New York v. James Reid. Reid objected: "We would object on lack of proper predicate, Your Honor, as to relevance." The State replied: "Your Honor, the State's Exhibit Number 1 is self-authenticating. It is relevant and it involves the same James Reid. Um, all of his family has already testified that he has this conviction. And we could tender to the Court if you would like to see it." The trial court admitted State's Exhibit 1. The State, however, abandoned the enhancement allegation.

Again, even if the trial court abused its discretion in admitting State's Exhibit 1, the error was harmless. Error in admitting evidence concerning extraneous offenses is reviewed under the standard for non-constitutional error, which we disregard if the error did not affect the appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Higginbotham v. State*, 356 S.W.3d 584, 592 (Tex. App.—Texarkana 2011, pet. ref'd).

In this case, as discussed above, the jury heard substantial testimony about Reid's prior conviction during the guilt/innocence phase. Furthermore, the following instruction was included in the punishment charge:

> You are instructed that the Defendant may be assessed punishment only for the offenses for which you have found him guilty.
> You are instructed that certain evidence has been admitted before you regarding the Defendant having been allegedly involved in other acts or act, if any, other than the ones for which he is now on trial. You cannot consider said evidence unless you find and believe beyond a reasonable doubt that the Defendant committed such other acts or act, if any were committed.
> In the event you have a reasonable doubt as to whether the Defendant committed the other acts or act, if any was committed, after considering all of the evidence before you and these instructions, you will not consider said acts or act for any purpose.
> Such evidence was admitted before you to assist you, if it does, in determining an appropriate punishment for the offenses for which you are assessing punishment.
> Therefore, if you believe such evidence, if any, beyond a reasonable doubt, you may not impose an additional punishment upon the Defendant for said acts or act, if any, but you may consider such evidence in determining an appropriate punishment for the offenses for which you are assessing punishment.

We generally presume that the jury follows the trial court's instructions in the manner presented. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). For these reasons,

we hold that any error in admitting State's Exhibit 1 was harmless, and we overrule Reid's third issue.

## Consecutive Sentences

In his fourth issue, Reid contends that the imposition of consecutive sentences without a statement of reasons constitutes cruel and unusual punishment in violation of the Eighth Amendment.

Article 42.08 of the Code of Criminal Procedure vests the trial court with discretion to order concurrent or consecutive sentences. *See* TEX. CODE CRIM. PROC. ANN. art. 42.08 (West Supp. 2014). Reid acknowledges that the Court of Criminal Appeals in *Johnson v. State*, 492 S.W.2d 505 (Tex. Crim. App. 1973), rejected a contention that article 42.08 "could be constitutional only if certain standards are set forth to guide the court in the exercise of its discretion." *Id.* at 506. Reid argues, however, that *Johnson* must be reconsidered in view of subsequent U.S. Supreme Court holdings regarding death penalty jurisprudence. But the Court of Criminal Appeals has been given the opportunity to overrule *Johnson* and has declined to do so. *See Barrow v. State*, 207 S.W.3d 377, 381 (Tex. Crim. App. 2006). In *Barrow*, the court stated, "The Legislature has charged the trial court with the determination of whether to cumulate, and the trial court is free to make this determination so long as the individual sentences are not elevated beyond their respective statutory maximums." *Id.* at 382. Absent further guidance from the Court of Criminal Appeals, we thus hold that the imposition of consecutive sentences without a statement of reasons does not constitute cruel and unusual punishment in violation of the Eighth Amendment. We overrule Reid's fourth issue.

Having overruled all of Reid's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed October 29, 2015
Do not publish
[CR25]

